491 So.2d 1356 (1986)
STATE of Louisiana
v.
Venson Dean VAMPRAN.
No. KA 85 0904.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
Rehearing Denied August 20, 1986.
*1358 Abbot Reeves, Gretna, William Campbell, Jr., New Orleans, for appellee.
George C. Ehmig, Covington, for appellant.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
Venson Dean Vampran and Susan Bass were charged by a single grand jury indictment with the second degree murder of Mark Steven Bass in violation of La.R.S. 14:30.1. The trial court, on motion of both defendants, ordered severance of the indictment. Defendant, after pleading not *1359 guilty, was tried before a jury and found guilty as charged. The trial court sentenced defendant to a term of life imprisonment without benefit of probation, parole or suspension of sentence.
Defendant brings this appeal urging twenty-six assignments of error. Assignments of error numbers six, ten, thirteen, fourteen, fifteen, eighteen, twenty, twentyfour and twenty-five were not briefed and, therefore, are considered abandoned. Uniform Rules, Court of Appeal, Rule 2-12.4; State v. Trevathan, 432 So.2d 355 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1141 (La.1983).

FACTS
Shortly after midnight on October 17, 1984, a pickup truck driven by Venson Dean Vampran was stopped in Madisonville, Louisiana, by Corporal John Dillon of the St.Tammany Parish Sheriff's Office. Corporal Dillon testified that he pursued defendant's vehicle because of broken taillights and the erratic and evasive manner in which the vehicle was operated. After initially approaching Corporal Dillon, defendant returned to the truck's cab to retrieve his driver's license. At the same time, Susan Bass, a passenger in defendant's vehicle, exited the cab and approached the rear of defendant's truck. Corporal Dillon asked defendant and Susan Bass to step aside so he could check the truck license plate. At that time, he noticed fresh blood seeping from beneath the tailgate. In response to Corporal Dillon's inquiry seeking identification of the cargo being carried, defendant remarked, "Oh, shit," which was followed by Susan Bass' assertion, "It's a body. He's killed my husband." Upon inspection, Corporal Dillon discovered a dead body, later identified as that of Mark Steven Bass, in the bed of defendant's pickup truck. Thereafter, defendant was placed under arrest and advised of his Miranda rights. After preliminary investigation at the scene, defendant and Susan Bass were both transported to the sheriff's office. Each was interrogated and gave a statement describing the events preceding Mark Bass' death.
Defendant stated he returned from work during the afternoon of October 16, 1984, to find that his wife and children had moved from their family home. That evening, he drove to Waveland, Mississippi, hoping to locate his wife, who had relatives residing in that city. Defendant bought a pint of Jack Daniels whiskey in Covington, Louisiana, which he consumed during the trip to Mississippi. Defendant stopped and bought another bottle of Jack Daniels whiskey later that evening. While returning from Mississippi, defendant offered a ride to a female hitchhiker who was standing near a St. Tammany Parish interstate exit That hitchhiker, later identified as Susan Bass, offered defendant sexual favors in exchange for a detour of his intended course of travel. The purported object for the detour was to retrieve a package. Susan Bass directed defendant through a circuitous route which ended on a dead-end road in Oak Knoll Subdivision off the Talisheek-Abita Road in St. Tammany Parish. When defendant stopped his truck, he immediately observed a human figure laying on the side of the road. Further investigation revealed that the figure was the bleeding body of a man, later identified as Mark Steven Bass, Susan Bass' husband. Susan Bass told defendant she would inform the police he had killed her husband if defendant did not assist in disposing of the body. While attempting to leave the scene, defendant's truck became stuck in a drainage ditch. Defendant gave Susan Bass a tire tool to use as a digging implement in an attempt to free his truck. Defendant ultimately used a tractor which had been located in the yard of neighboring property. With the assistance of Susan Bass, defendant towed his truck from the ditch and loaded Mark Bass' body onto the bed of the truck. Defendant and Susan Bass were en route to dump Mark Bass' body in the river when they were stopped by Corporal Dillon.
Lieutenant David Bulloch testified that defendant was able to direct him and Detective McCormick to the site where the victim's body was loaded into defendant's truck. Corporal Wyatt McCullough, also *1360 involved in the crime scene investigation, discovered a tire tool in a ditch at that site. About forty feet from the tire tool, he found scattered coins and a brown wallet which contained items belonging to Mark Bass.
An autopsy conducted by Dr. Charles Crumpler, a pathologist, revealed that Mark Bass had died as a result of multiple wounds to the front and back portions of his torso and the back of his head. Hemorrhaging in his soft tissues indicated that the victim was still alive when all the wounds were inflicted. Time of death was fixed at between 6:00 p.m. and 12:00 a.m. on the night of October 16,1984. Additionally, Dr. Crumpler testified that the wounds on the victim's body were consistent with having been inflicted by the recovered tire tool. Because of the similarity in the size of the wounds, Dr. Crumpler opined that all the wounds had been caused by one instrument.
Defendant's employer, Preston Crawford, testified that due to inclement weather defendant did not work on Monday, October 15, 1984. James Tamplin, an employee at the Wine Cellar liquor store in Waveland, Mississippi, testified that the defendant, Susan Bass and Mark Bass arrived together at the store during the late afternoon of October 15, 1984. (Defendant, in his statement, denied ever seeing Mark Bass alive or being acquainted with Susan or Mark Bass prior to the night of October 16, 1984.)

DISCOVERY OF STATE'S INTENT TO USE PRESUMPTIONS OR INFERENCES

(Assignment of Error No. 1)
Through assignment of error number one, defendant seeks review of the trial court's ruling which declined to order the state to more specifically address the following question propounded by defendant in his motion for discovery:
If specific intent is one of the essential elements of the foregoing statute then and in that event state whether or not the State will use any presumption(s) or inference(s) to establish intent and if so state upon what premise or evidence the State will exhibit to create such inference(s) or presumptions(s).
We have reviewed La.C.Cr.P. art. 716 et seq. and find that nowhere therein is discovery provided for this information.
This assignment of error is without merit.

DISCOVERY OF PERSONAL HISTORY OF VICTIM

(Assignment of Error No. 2)
By assignment of error number two, defendant complains of the trial court's failure to order the State to furnish details of Mark Bass' personal history in response to a specific discovery request. In particular, defendant notes the alleged failure of the State to identify Mark Bass' date of birth, the name and address of his next of kin and his last known employer.
A review of La.C.Cr.P. art. 716 et seq. shows that no specific provision therein provides for the discovery of this information. The only conceivable way this would be discoverable is if the information was contained in a document, was favorable to the defendant and the document was in the possession of the State. La.C.Cr.P. art. 718(1). No such showing has been made. The record before us indicates all pertinent information in the possession of the State was provided to the defendant.
This assignment of error is without merit.

DISCOVERY OF VICTIM'S MENTAL AND PHYSICAL HISTORY

(Assignment of Error No. 3)
In assignment of error number three, defendant contends the trial court erred in failing to order the State to disclose information relating to Mark Bass' mental and physical history, including any known history of alcoholism, drug abuse and violent behavior. Defendant's argument centers on the possibility that such a disclosure might have provided him with a self-defense motive. However, defendant, *1361 in his statement, stated he had never seen Mark Bass alive. A theory of self-defense would seem to be precluded by his version of the facts. In addition, defendant was provided with Susan Bass' grand jury testimony detailing Mark Bass' drinking behavior and with Mark Bass' rap sheet, which included several alcohol related traffic offenses. When the autopsy was performed, Mark Bass' blood alcohol was negative, and no drugs were detected in the blood drug screening. Moreover, the State has no duty to investigate to obtain exculpatory information, but rather has a duty to provide a defendant with exculpatory information which is within its possession, custody, control or knowledge. La.C.Cr.P. arts 718 and 719. State v. Edwards, 420 So.2d 663 (La.1982). The defendant has demonstrated no prejudice.
This assignment of error is without merit.

DISCOVERY OF IDENTIFICATION OF DEFENDANT

(Assignment of Error No. 4)
By assignment of error, number four, defendant avers that the trial court erred by failing to require the State to respond to defendant's discovery questions under the heading "Identification of the Defendant." Although defendant focuses his brief on photographic identification, the thrust of his argument before the trial court centered on identification predicated upon statements by others implicating defendant in the instant crime. The record reveals that defendant was provided with a copy of Susan Bass' statement and of her testimony before the grand jury. Moreover, in an exchange between the trial court, prosecutor and defense counsel at the hearing on the discovery motion, attention was focused on the scope of defendant's request in revealing the identity of anyone, other than defendant or the Basses, present at the crime scene. When the trial court asked the State if anyone else was present at the crime scene, defense counsel observed, "That would have satisfied me if they would have said no." (State had responded to this discovery question that this was "N/A" or not applicable.)
Thereafter, the prosecutor stated that he had no knowledge of any other person's presence at the crime scene. Thus, contrary to his assertion in brief, defendant indicated satisfaction with the State's response to the above-referenced series of questions, and no contemporaneous objection was made.
This assignment of error is without merit.

DISCOVERY OF MUG SHOTS

(Assignment of Error No. 5)
By assignment of error number 5, defendant complains that the trial court erred by refusing to require the State to respond to a defense discovery question which sought the identity of any witnesses or prospective witnesses who were shown "mug shots" during the State's investigation of this incident.
Question Number 18 of the defendant's Motion for Discovery reads as follows, to-wit:
18)a) Was a showing of "mug shots" to any witnesses or prospective witnesses conducted at any time during the investigation of this case either before or after the defendant was arrested for the charge herein?
b) If so, with respect to each showing of "mug shots" conducted, please state.
1) The date, place, time of beginning and time of ending of each such showing.
2) The number of photographs and or artist's sketches used in each such showing, and whether the photographs and/or sketches were in black and white or color.
3) The name and last known residence and business addresses of each and every person depicted in each such photograph and/or artist sketch.
4) With respect to each person depicted in each photograph and/or artist sketch, please state and/or describe that person's (a) sex; (b) age; (c) height; (d) weight; (e) race; (f) complexion;

*1362 (g) color of hair; (h) color of eyes; (i) scars, tatoos and other distinguishing features.
5) The name, title (if any) and last known residence and business address of the person(s) conducting each such showing.
6) The name, title (if any) and last known residence and business address of each and every person present at each showing, and whether they were present as a prospective witness or in some other capacity.
7) Was any person identified as the alleged perpetrator of the crime herein charged? If so,
a) At which showing was the identification made?
b) Which person(s) was identified and by whom?
In response to this entire question, and all of its subparts, the State made one single answer, namely, "N/A", again meaning that the question is not applicable to this case.
From the style of the subparts of the above-referenced question, it is quite clear that defendant's question was concerned with those prospective witnesses who could identify him as the perpetrator of the instant offense. Contrary to defendant's assertion in brief, he was advised by the prosecutor, that as part of the State's investigation of this incident, photographs of the Basses and defendant were shown to individuals in Mississippi. The record reveals that the trial court declined to order the State to reveal the identity of those individuals. Defense counsel did not request an in camera inspection of any such information.
Defendant grounds his entitlement to this information on an allegation that by declining to reveal the identity of such individuals, in particular the identity of James Tamplin, the liquor store employee who testified at trial, the State suppressed exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In Brady v. Maryland, the United States Supreme Court held that the State, upon request, must disclose evidence favorable to the accused where it is material to either guilt or punishment regardless of the good faith or bad faith of the prosecution. The Brady rule has been extended to encompass cases in which the nondisclosed evidence pertains to the reliability of key State witnesses. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Smith, 430 So.2d 31 (La.1983); and State v. McLeland, 456 So.2d 633 (La.App. 2nd Cir.1984), writ denied, 461 So.2d 312 (La.1984). Brady is concerned not with the State or federal discovery statutes, but with a defendant's right to a fair trial mandated by the due process clause of the Fifth and Fourteenth Amendments.
On the showing made, we cannot say the trial court erred by failing to order disclosure of the identity of all individuals who might have been shown defendant's "mug shot" in the course of the State's investigation of this incident. This factual situation differs from one wherein witnesses with an opportunity to observe an incident are unable to identify or misidentify an accused as the perpetrator of an offense. In that situation, such information could, under some circumstances, tend to exculpate defendant. State v. Yarbrough, 418 So.2d 503 (La.1982). In the instant case, establishing that individuals in Mississippi were unable to identify defendant as having been seen in the company of Susan or Mark Bass, prior to Mark Bass' death, is not really helpful to the defense. The existence of such nondisclosed evidence is truly neutral. Compare United States v. Rhodes, 569 F.2d 384 (5th Cir.), cert denied, 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978). Moreover, James Tamplin's testimony tended to inculpate defendant for it established that defendant had been seen in the company of both Susan and Mark Bass on the day prior to Mark Bass' murder. The names and addresses of inculpatory witnesses are not discoverable. La.C.Cr.P. art. 723. Defendant avers that he could have undermined the reliability of Tamplin's testimony by exposing the alleged suggestiveness of Tamplin's original *1363 identification of defendant. However, he has failed to build any record to support this allegation.
For the foregoing reasons, this assignment of error is without merit.

DISCOVERY OF CRIMINAL RECORDS OF WITNESSES

(Assignments of Error Nos. 7 and 9)
By assignments of error numbers seven and nine, defendant contends that the trial court erred in refusing to require the State to provide defendant with records of arrests and convictions of prospective State witnesses as requested by defendant in his motion for discovery. The record reveals that defendant was provided with rap sheets for himself, Susan Bass and Mark Bass. In response to questioning by the trial court, the prosecutor stated that he did not have rap sheets on any other witnesses. The trial court ordered the State to provide defendant with any rap sheets of witnesses in its possession.
The Louisiana Supreme Court in State v. Harvey, 358 So.2d 1224 (La.1978), found that the State must respond to a specific request of the defense by stating whether the State had knowledge or possession of the conviction records. Any such records within the knowledge or possession of the prosecutor must be furnished to the defense or submitted to the court for determination as to whether the defense is entitled to them. In the instant case, it was ascertained by the court that the State did not have in its possession any rap sheets except the ones furnished to the defense. In addition, the State had no knowledge of any other rap sheets.
The trial court followed the rule promulgated in Harvey; State v. Washington, 407 So.2d 1138 (La.1981); and State v. Alexandra, 451 So.2d 1278 (La.App. 4th Cir.1984).
Accordingly, these assignments of error are without merit.

DISCOVERY OF NAMES AND ADDRESSES OF STATE'S WITNESSES

(Assignment of Error No. 8)
By assignment of error number eight, defendant contends that the trial court erred by failing to order the State to provide defendant with a list, naming and identifying by date of birth and address, all persons interviewed by the State in connection with this incident.
In accordance with the trial court ruling denying defendant's request, it is true that a defendant does not generally have a right to the names and addresses of State witnesses. State v. Smith, 418 So.2d 515 (La.1982); State v. Jackson, 362 So.2d 1082 (La.1978); State v. Passman, 345 So.2d 874 (La.1977). Where a determination has been made that there exist peculiar and distinctive reasons why fundamental fairness requires such discovery, no prohibition of the right of discovery exists. See La.C.Cr.P. art. 723; State v. Washington, 411 So.2d 451 (La.1982) and State v. Walters, 408 So.2d 1337 (La.1982).
In brief, defendant argues that, because the State maintained that he was not entitled to this information, one can infer that there were prospective witnesses interviewed that may have been able to provide some exculpatory evidence. On this conjecture alone, we cannot conclude there existed peculiar and distinctive circumstances requiring disclosure by the State. There is no showing that defendant could not prepare an adequate defense through normal investigative means.
Rulings of the trial court in pretrial matters are generally shown great deference absent a clear showing of abuse of discretion. State v. Stucke, 419 So.2d 939 (La.1982).
Finding no abuse of discretion herein, this assignment of error is without merit.

NOTICE FOR GOING TO TRIAL

(Assignment of Error No. 11)
By means of this assignment, defendant contends that the trial court erred *1364 by allowing the trial to proceed against defendant with only one hour's notice.
In brief, defendant urges that the State had elected to first try codefendant, Susan Bass. Later, the State announced that it would try defendant, rather than Susan Bass, on the first scheduled day of trial only one hour before trial on the merits commenced.
The record before us does not reflect that defendant had an reliable basis on which to support his alleged belief that trial on the merits would not proceed against him as scheduled on April 8, 1985. On April 4, 1985, four days prior to the date set for trial, defendant filed a motion for continuance. Defendant's motion, which was denied by the trial court, was grounded on allegations of prejudice stemming from extensive media coverage of the incident and on the need for the trial court to rule on various pretrial motions prior to commencement of trial. Defendant sought review from that ruling by application to this court for a supervisory writ. Defendant's writ application was partially granted, and we ordered the trial court to rule on a pending motion to suppress prior to trial on the merits. Thus, defendant knew his trial had not been continued. He has abandoned an assignment of error seeking review of that ruling.
Although defendant argues that the State informed him Susan Bass would be tried before he was, defense counsel's discussion in chambers, during the morning of April 8,1985, indicates otherwise. In pertinent part, defense counsel stated: "Although I had requested the District Attorney to elect which one to try on Wednesday, [April 3, 1985] ... I was not informed which case it was going to try until just about an hour ago. I would like to lodge a formal objection to that."
The record does not support defendant's allegation that he justifiably believed he would not be tried as scheduled. Continuance is discretionary with the trial judge. La.C.Cr.P. art. 712. Absent a showing of specific prejudice, there is no ground for reversal.
This assignment of error is without merit.

INDIVIDUAL VOIR DIRE

(Assignment of Error No. 12)
By means of this assignment, defendant contends the trial court erred by refusing to allow individual examination of each juror out of the presence of the others.
The record reflects that defendant requested individual examination of panel members out of the presence of the others. However, potential jurors were questioned in groups of eighteen. Defendant's request for individual voir dire was predicated on the publicity surrounding the incident. A motion for change of venue was filed by defendant. A definitive ruling on that motion was deferred until voir dire. Change of venue was denied by the trial court, and defendant apparently acquiesced as he does not urge error from that ruling of the trial court.
There is no provision in our law which either prohibits or requires the sequestration of prospective jurors for an individual voir dire. State v. Wilson, 467 So.2d 503 (La.1985). Defendant has the burden to show that the court abused its discretion in refusing to sequester the venire during voir dire. Defendant has failed to sustain that burden.
In brief, defendant does not cite even one instance where other prospective jurors were tainted by failure on the court's part to require each potential juror to be questioned in private. Moreover, defendant has failed to provide a transcription of the voir dire for our review. A party moving for appeal must request that portion of the proceedings necessary for review in light of the assignments of error to be urged. Only that which is in the record may be reviewed. See La.C.Cr.P. art. 914.1; State v. Elliott, 467 So.2d 1144 (La.App. 2nd Cir.1985).
For the foregoing reasons, this assignment of error is without merit.

*1365 ADMISSIBILITY OF TIRE TOOL AND FINGERPRINT

(Assignments of Error Nos. 16, 17, 21 and 22)
Defendant contends that the trial court erred in admitting the recovered tire tool, State Exhibit 15, and a latent fingerprint lift, State Exhibit 23, into evidence without requiring the State to establish a proper chain of custody.
To properly identify admissible evidence at trial, the identification can be visual or it can be by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Gibson, 459 So.2d 1294 (La.App. 1st Cir.1984). For admission, it suffices that the custodial evidence establishes it is more probable than not that the object is one connected with the case. State v. Sweeney, 443 So.2d 522 (La.1983). Moreover, any deficiencies in the chain of custody are properly attributable to the weight, rather than to admissibility. State v. Tonubbee, 420 So.2d 126 (La. 1982). Ultimately, connexity of evidence is a factual matter for determination by the trier of fact. State v. Vaughn, 431 So.2d 763 (La.1983).
Review of the record convinces us that an adequate foundation was established to allow the trial judge to conclude that the exhibits probably were connected with this case.
Corporal McCullough testified that he found a tire tool at the site where Mark Bass' body was loaded onto defendant's pickup truck. He wrapped the tool in cellophane and then placed it inside a paper bag. After showing the tool to the pathologist who performed the autopsy, defendant sealed the bag. Corporal McCullough was able to positively identify the bag from his initials. He delivered the bag and its contents to the sheriff's evidence room. Debra Houck, an evidence officer, testified that she had possession of the bag and its contents before and after its delivery to the State Police Crime Laboratory. Shirley Phillips, a forensic scientist with the crime laboratory, was able to identify the item by her initials and the appropriate case number on the bag.
With respect to the latent fingerprint lift, Corporal McCullough made a visual identification of that item as being that which he had lifted from the hood of defendant's truck on October 17, 1985. In addition, Cybil Guidry and Carol Richard, the fingerprint analysts, both evaluated the latent print and both testified that this item was the one they had evaluated in this case. Their identification was based on case numbers, notation of identification, and date of identification.
In view of the foregoing, we find defendant's assignments of error to be without merit.

FAILURE TO PUT NAME ON WITNESS LIST

(Assignment of Error No. 19)
By means of this assignment, defendant contends the trial court erred by permitting prosecution witness, James Tamplin, to testify at trial after his name had been omitted from the State's witness list.
Whether the identity of James Tamplin was concealed by the State is not fully developed by the record. However, the record is clear that when the State called Tamplin to testify, defendant did not request a recess or seek to exclude the testimony of that witness. All defense counsel said was, "I don't recall that name being on the witness list, Your Honor."
Additionally, the Assistant District Attorney made it clear to the court that his witness list may not be complete. That is obvious from the following colloquy between the Assistant District Attorney and the court:
BY THE COURT: Would either you or Mr. Pastuszek read your witness list.
BY MR. FITZSIMMONS: Your Honor, for the record, Your Honor, at this time we're giving the names of the prospective witnesses
BY THE COURT: As a may-call.

*1366 BY MR. FITZSIMMONS: As a may-call, Your Honor. It doesn't necessarily mean that we will call these people.
Your Honor, for the record, there may as the course of the trial goes on some witness who may appear that we were not aware of at this time through some type of testimony.
[Emphasis added.]
Defendant chose to participate in examining Tamplin. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841.
Accordingly, this assignment of error is without merit.

ADMISSIBILITY OF FINGERPRINT COMPARISON CARD

(Assignment of Error No. 23)
By means of this assignment, defendant contends that the trial court erred by permitting introduction into evidence of the fingerprint comparison card of Mark Steven Bass (State Exhibit 24). Defendant argues that item was inadmissible because the signature of "Mark S. Bass" on that card was not identified, and the officer who allegedly took the fingerprints could not properly identify the card.
A review of the record reveals that Cybil Guidry, a fingerprint analyst with the Louisiana State Police Crime Laboratory, was allowed to testify without objection by defendant. Ms. Guidry noted that she compared a latent fingerprint lift (State Exhibit 23) with a fingerprint comparison card identified as belonging to one Mark Steven Bass (State Exhibit 24). As a result of that comparison, she was able to positively identify the latent lift as being a print from the right ring finger of the same individual whose inked fingerprints were provided by the comparison card. Following the conclusion of Ms. Guidry's testimony, the prosecutor offered State Exhibit 24 in evidence. However, defense counsel objected to its introduction. In response to defense counsel's objection, the trial court deferred ruling on the admissibility of that exhibit.
The prosecutor argued that State Exhibit 24 is a business record and, therefore, falls within an exception of the hearsay rule. If a document purports to be an official record and is proved to have come from the proper public office where such official papers are kept, it is generally agreed that this authenticates the offered document as genuine. Herein, despite a possible inference to that effect, the State did not authenticate the original document by custody. State v. Nicholas, 359 So.2d 965 (La.1978) and State v. Franklin, 461 So.2d 640 (La.App. 1st Cir.1984).
Neither Lieutenant Bulloch nor Cybil Guidry, who conducted the fingerprint comparison, could testify that the inked prints (State Exhibit 24) are the victim's. Lieutenant Bulloch, in laying a foundation for admission of the comparison card, only suggested its origin as a document from the St. Tammany Parish Sheriff's Office files. He did not then attempt to testify to the effect of the document, i.e., that the fingerprints were that of the victim Bass. Ms. Guidry compared the inked prints from the St. Tammany Parish Sheriff's Office with the latent print found at the crime scene (State Exhibit 23) and testified that, in her opinion, they were identical. All that was established is that the latent fingerprint and State Exhibit 24 were made by the same person. There was no proof of the identity of the person making them.
Thus, this line of questioning was of little probative value. Moreover, this evidence is not really relevant to a material issue. Under the summarization of defendant's statement provided for the jury, it does not really support an inference of a relevant fact. The jury was unaware that the victim's hands were bound, and possible inadvertent contact with the hood of defendant's truck was not negated. Thereafter, the State recalled Lieutenant Bulloch. Lieutenant Bulloch identified the item as a fingerprint card of one Mark S. Bass whose inked prints were taken on March 22, 1978, in connection with Bass' application for a bartender's license. Based on that foundation, the trial court allowed the prosecution to introduce State *1367 Exhibit 24 into evidence for whatever weight the trier of fact might choose to give it.
As noted above, no objection was made to Cybil Guidry's testimony concerning the fingerprint comparison analysis. Any error in the admission of the card was harmless.
This assignment of error is without merit.

MOTION FOR NEW TRIAL

(Assignment of Error No. 26)
The defendant was sentenced on April 19, 1985. On that same date, the defendant filed a written motion for an appeal which was granted. On May 20, 1985, the defendant filed a motion for a new trial alleging the discovery of new and material evidence. (The defendant filed a motion for a new trial on other grounds which was disposed of prior to sentencing. That motion is not the subject of this assignment of error.) In the memorandum in support of the motion, the defendant asserted he had just discovered that James Tamplin initially identified Mark Bass, Susan Bass and the defendant in an illegally suggestive manner, that is, only the photographs of Mark Bass, Susan Bass and the defendant were shown to Tamplin. James Tamplin was a key witness in the case because he refuted the defendant's statement about how he came in contact with Mark and Susan Bass. The defendant claimed the method by which the identification was made could have been used to attack Tamplin's identification on constitutional grounds and could have been used to attack its validity. He asserted this evidence was favorable to his defense and should have been declared by the State in its reply to his discovery motion. The motion was heard on June 17, 1985, and was denied. The defendant obtained a second motion and order for an appeal on June 18, 1985.
Discovery of new and material evidence under some circumstances can serve as a ground for a new trial. La.C.Cr.P. art. 851(3). With reference to such an allegation, La.C.Cr.P. art. 853 provides, in pertinent part, as follows:
When the motion for a new trial is based on ground (3) of Article 851, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed; but if an appeal is pending the court may hear the motion only on remand of the case. [Emphasis added.]
The jurisdiction of a trial court is divested and that of an appellate court attaches upon the entering of an order of appeal, and the trial court thereafter has no authority or jurisdiction to conduct a hearing on a motion for a new trial unless the case is remanded from the appellate court. La. C.Cr.P. art. 916; State v. Spell, 388 So.2d 754 (La.1980). In official revision comment (c) under La.C.Cr.P. art. 916, appears the following:
The trial court cannot hear a motion for a new trial after divestiture of jurisdiction unless the case has been remanded by the appellate court in accordance with Art. 853, which reads in part: "When the motion for a new trial is based on ground (3) [new evidence] of Article 851, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed; but if an appeal is pending the court may hear the motion only on remand of the case."
Upon the entry of the first order of appeal herein on April 19,1985, the trial court was divested of jurisdiction to hear the subsequent motion for a new trial. The record before us does not reflect that this court remanded the case to the trial court to hear the motion. In the absence of such a remand, the trial court was without jurisdiction and its actions with reference to the motion were null and void. However, the defendant is still entitled to have his timely filed motion properly heard, and he is entitled to a remand for that purpose.

*1368 DECREE
For the foregoing reasons, the conviction and sentence are affirmed; however, this case is remanded to the trial court for a hearing of the motion for a new trial, reserving to the defendant the right to appeal an adverse ruling on that motion.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR HEARING ON MOTION FOR NEW TRIAL.