536 So.2d 615 (1988)
STATE of Louisiana
v.
Willie James SCOBY.
No. KA 88 0424.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Writ Denied March 30, 1989.
*617 Mark Rhodes, Asst. Dist. Atty., Houma, for appelleeState of La.
Anthony Champagne, Indigent Defender, Houma, for appellantWillie James Scoby.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
Willie James Scoby was charged by bill of information with attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1.[1] He was tried by a jury, which convicted him as charged. The trial court imposed a sentence of twelve years at hard labor. Defendant appealed, urging six assignments of error, as follows:
1. The trial court erred by overruling defendant's objection to the state's request that the victim show his scar to the jury.
2. The trial court erred by denying defendant's motion to suppress an inculpatory statement.
3. The trial court erred by overruling defendant's objection to the introduction of an additional oral inculpatory statement of which defendant had not received notice.
4. The verdict is contrary to the law and evidence.
5. The court erred by denying defendant's motion for a new trial.
6. The sentence imposed is excessive.

FACTS
Defendant was charged with the attempted murder of Joseph Wheaton.[2] The incident occurred in the street outside the Houma, Louisiana, home of Joyce Johnson, the victim's girlfriend. Defendant and Ms. Johnson had been romantically involved in the past.
Ms. Johnson testified that defendant came to her mother's home and unsuccessfully attempted to entice the victim outside. A short time later, as the victim, Ms. Johnson, and other members of her family returned from a short visit to a neighbor's house, defendant, accompanied by a group of his friends, again accosted the victim. In the ensuing altercation, defendant attacked the victim with a large butcher knife. The victim tripped as he tried to flee; and, thereafter, defendant stabbed him four times with the butcher knife. Defendant pursued the victim as the victim fled to safety.
The victim sustained extensive injuries and was transported to a local hospital for emergency treatment. Several hours later, defendant turned himself in to the Houma City Police. He gave a statement in which he claimed that one of his friends, Leonard Williams, produced the knife during the fray. Defendant claimed that Williams first "cut" the victim with the knife before he gave the knife to defendant. Defendant thereafter admitted that he stabbed the victim until the victim got up and ran away.

*618 GRUESOME EXHIBIT
By assignment of error number one, defendant contends the trial court erred by permitting the victim to exhibit his scar to the jury. Defendant objected to the exhibition, claiming that the scar had no probative value. Defendant claimed that it was unnecessary and inflammatory for the jury to see the scar and that seeing it would unduly prejudice the jury. The trial court overruled the objection.
In considering whether or not demonstrative evidence is admissible over objection that it is unduly inflammatory, the test to be applied is whether or not the proffered evidence is relevant to any material issue in dispute and, if so, whether or not its probative value exceeds its probable prejudicial effect. State v. Hawthorne, 345 So.2d 1170, 1171 (La.1977). Contrary to defendant's claim that the scar had no probative value, it confirmed the victim's testimony regarding the incident. Further, the scar was evidence of the extent of the victim's injuries, which was relevant to establish that defendant stabbed the victim with the specific intent to kill or inflict great bodily harm and, therefore, committed the offense of attempted second degree murder, rather than a lesser offense. Although the prejudicial effect of the exhibit is difficult to determine from the record before this Court, we find no indication that the victim's scar was so gruesome that it would outweigh its probative value. Accordingly, this assignment of error has no merit.

DENIAL OF MOTION TO SUPPRESS
By assignment of error number two, defendant submits the trial court erred by denying his motion to suppress the inculpatory statement that he made at the Houma City Police department several hours after the incident. He contends the statement was involuntary because he was intoxicated at the time he made it.
Before a confession or inculpatory statement can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. Where the free and voluntary nature of a confession is challenged on the ground that the defendant was intoxicated at the time of the confession, it will be rendered involuntary only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. State v. Meredith, 400 So.2d 580, 585 (La.1981). Whether or not the intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact, and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. State v. Rankin, 357 So.2d 803, 804-805 (La.1978).
The trial court conducted a hearing on defendant's motion to suppress during the trial, out of the presence of the jury. Officer Eugene Callahan testified that, after he advised defendant of his constitutional rights and obtained defendant's acknowledgement that he understood those rights, defendant gave him an oral statement concerning the incident. Officer Callahan further testified that he transcribed defendant's statement and that defendant thereafter signed the written copy. Officer Callahan specifically related that defendant appeared to be coherent when he made the statement. He further testified that defendant appeared to make the statement knowingly, intelligently and voluntarily. He further related that he did not detect the odor of alcohol from defendant's breath and that defendant did not slur his words when he spoke or stagger when he walked.
Defendant testified that he and Leonard Williams began to drink alcoholic beverages at 11:30 a.m. on the date the incident occurred. Defendant claimed that he drank five or six fifths of Thunderbird wine. He further claimed that he drank twelve cans of beer in approximately twenty minutes before he began to drink the wine. Defendant related that he was under the influence of alcohol at the time he *619 made the statement, that he had trouble walking at that time, and that he did not fully understand all of the rights that were read to him by the officer. Although defendant admitted that he understood a portion of the advice of rights he received, he testified that he did not fully understand the consequences of signing the waiver of rights form and that he would not have given the statement if he had not consumed such a large amount of alcohol.
Leonard Williams also testified on defendant's behalf. Williams initially testified that he was with defendant the entire day and that the only alcohol consumed by defendant was a twelve pack of beer. Thereafter, despite an order sequestering the witnesses, Williams remained in the courtroom during defendant's testimony. After defendant testified, Williams was recalled to the stand by defense counsel. Williams then testified that he had previously misunderstood the questions and had responded under the belief that he was being questioned about the amount of alcohol that he had consumed that day, rather than the amount consumed by defendant. He claimed that he drank a twelve pack of beer that day and that defendant drank five bottles of Thunderbird wine. On cross-examination, Williams was asked whether or not defendant also drank beer on that day. Williams indicated that he had not.
In finding that defendant's statement was voluntary, the trial court obviously discredited the testimony of defendant and Leonard Williams. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Moreover, we note that defendant's testimony, even if credible, did not establish that he was so intoxicated that his comprehension was negated and that he was unconscious of the consequences of his actions. The record reflects that defendant specifically admitted that he understood a portion of the rights explained to him. Further, Officer Callahan testified that defendant voluntarily arrived at the station, accompanied by Rev. Verrett, a spiritual advisor. He related that, at that time, defendant appeared to comprehend the significance of his actions. Although Joyce Johnson testified that defendant was "full of liquor" at the time he accosted the victim and that she detected the aroma of Thunderbird wine about his person, the record further reflects that the incident occurred at approximately 8:00 p.m. and the statement was obtained some three hours later. We find, therefore, that the trial court did not err in determining that defendant was not so intoxicated that he was unable to comprehend the consequences of his statement. This assignment of error has no merit.

ADMISSION OF STATEMENT WITHOUT NOTICE
By assignment of error number three, defendant submits that the trial court erred by overruling his objection to the introduction of an oral inculpatory statement. Defendant contends the statement was not admissible because he had not received pre-trial notice of the state's intention to introduce it as required by La.C.Cr.P. art. 768.
Before trial, the state filed a "768" notice, notifying defendant of its intention to introduce an inculpatory statement. The state attached a copy of defendant's statement, as transcribed by Officer Callahan, to the notice. During the trial, Officer Callahan read this statement to the jury. Thereafter, the state asked him whether or not defendant had made other, verbal statements to him; and Officer Callahan replied that he had. Defendant then objected to testimony regarding any other statement since the state had not produced formal notification of it. The state replied that, since defendant had received the benefit of "open-file" discovery, the provisions of La. C.Cr.P. art. 768 were inapplicable and anything contained in that file was admissible. The court then overruled defendant's objection. Thereafter, Officer Callahan testified that defendant told him he lied when he claimed that Leonard Williams had "cut" the victim and had given him the knife and that he, defendant, had done it all himself.
La.C.Cr.P. art. 768 provides as follows:

*620 Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
The minute entry of April 24, 1987, reflects that defendant accepted the state's offer of "open-file" discovery. However, the record does not indicate that a review of the state's files would have revealed the state's possession of the oral statement. The record before us does not contain any references to an oral statement by defendant; rather, with reference to defendant's statements, it contains only a copy of the "768" notice specifically incorporating defendant's initial statement and a transcription of that statement (as well as a copy of a statement by Leonard Williams.) Although the state attached to its brief a copy of a police report in which defendant admitted that he lied in the original statement, that report was not entered into evidence nor made a part of the appellate record. Only matters which are a part of the record may be reviewed. See State v. Vampran, 491 So.2d 1356, 1364, (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La. 1986). Accordingly, this Court can not consider the report submitted by the state.
Despite the state's attempt to justify the introduction of the oral statement on the grounds that defendant had received pre-trial discovery, it is ludicrous to assume that a defendant is aware of matters which are not included in the materials to be discovered. The discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042, 1044 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the state's case against him in order to prepare his defense. State v. Roy, 496 So.2d 583, 590 (La.App. 1st Cir.1986), writ denied, 501 So.2d 228 (La.1987). The state has a statutory obligation to provide the information requested by defendant which is properly discoverable. See La.C. Cr.P. art. 716, et seq. If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116, 1118 (La.1982). For that reason, the state's use of an "open-file" discovery response may be inadvisable because, if the record contains written responses containing the documentation received by the defendant, the possibility of a "swearing contest" between the state and the defense is eliminated.
Herein, we are not persuaded that the state gave adequate pre-trial notice of the existence of the second statement. Initially, we note that, since the statement was oral, in order for defendant to receive notice that the statement was made, it must first be reduced to writing. Moreover, although it was unnecessary because defendant had received pre-trial discovery, the state did provide a written notice of its intention to introduce defendant's initial statement. That notice did not refer in any way to the oral statement, despite the fact that, according to Officer Callahan's testimony, defendant repudiated the written statement immediately after he made it and orally confessed that he alone had stabbed the victim. We note, as well, that the state never claimed to have given defendant actual notice of the oral statement; nor did the state claim that its file (as reviewed by defense counsel) actually contained references to the oral statement.
We find, therefore, that the trial court erred in ruling that evidence of defendant's oral inculpatory statement was admissible without determining whether or not defendant had received notice of the existence of the statement. However, even if the state fails to notify the defendant of an inculpatory statement, the error may be harmless if the remaining evidence of guilt is overwhelming. State v. Quimby, 419 So.2d 951, 958 (La.1982); State v. Perry, 408 So.2d 1358, 1362 (La.1982). Defendant admitted in both statements that he stabbed the victim. The primary difference between the written statement, of *621 which defendant indisputably had received notice, and the oral statement, of which he claimed he had no notice, is that defendant claimed in the oral statement that he lied when he initially stated that Leonard Williams stabbed the victim. Defendant's admission to the crime, coupled with the eyewitness testimony of Joyce Johnson and the victim's own testimony, convince us that the other admissible evidence was overwhelming. Accordingly, we find no substantial rights of the accused were violated by the introduction of the oral statement and the trial court's ruling was harmless error. La.C.Cr.P. art. 921.

SUFFICIENCY OF THE EVIDENCE
By assignment of error number four, defendant submits that the evidence is not sufficient to support the verdict. Defendant does not set forth a specific manner in which he claims the evidence was deficient.
According to the bill of information, defendant was charged with an attempted second degree murder in violation of La.R.S. 14:27 and 14:30.1(1). La.R.S. 14:30.1(1) specifically refers to a murder committed "[w]hen the offender has a specific intent to kill or to inflict great bodily harm; ...." Therefore, defendant was charged with the attempt to kill Joseph Wheaton when he had the specific intent to kill.
Defendant admitted that he stabbed the victim with a large butcher knife. Testimony of the eyewitnesses and the victim established that defendant attacked the victim as the victim was lying on the ground and that he pursued the victim as the victim attempted to flee. The victim testified that he was stabbed in the back and that he sustained a broken rib, as well as liver and lung damage in the incident, all of which caused him to seek emergency medical treatment and to stay in the hospital for twenty-four days. We find, therefore, that any rational trier of fact, viewing the evidence in the light most favorable to the state, could have found that the state proved the essential elements of the offense beyond a reasonable doubt. See La. C.Cr.P. art. 821. This assignment of error has no merit.

DENIAL OF NEW TRIAL
By assignment of error number five, defendant submits that the trial court erred by denying his motion for a new trial. Defendant urges only that he was entitled to a new trial because of the accumulation of errors by the trial court, the insufficiency of the evidence, and the interest of justice. The denial of a motion for a new trial on the basis of the interests of justice is not reviewable on appeal. See State v. Savoie, 448 So.2d 129, 135 (La.App. 1st Cir.), writ denied, 449 So.2d 1345 (La.1984). Having found no merit to defendant's claims of errors committed by the trial court or the sufficiency of the evidence, we find no error in the trial court's denial of defendant's motion for a new trial urged on these bases. This assignment of error has no merit.

EXCESSIVE SENTENCE
By assignment of error number six, defendant submits that the sentence imposed is excessive. He does not claim that the trial court failed to consider applicable mitigating factors; rather, he simply contends that the sentence of twelve years at hard labor is excessive.
The maximum term of imprisonment that can be imposed for a conviction of attempted second degree murder is fifty years at hard labor. See La.R.S. 14:27 and 14:30.1. The sentence defendant received is less than one-fourth the maximum sentence statutorily permissible and, therefore, is not apparently severe.
The trial judge has wide discretion in the imposition of a sentence within statutory limits and, given compliance with the sentencing criteria of La.C.Cr.P. art. 894.1, a sentence will not be set aside in the absence of a manifest abuse of discretion. State v. Wardlow, 448 So.2d 257, 259 (La. App. 1st Cir.1984). In imposing sentence, the trial court noted that defendant was a convicted felon. The court further noted that defendant's conduct threatened serious harm, that there was an undue risk *622 that, during the period of a suspended sentence and probation, defendant would commit another crime, and that a lesser sentence would deprecate the seriousness of the crime. Considering the seriousness of the offense and the risk of harm to others, we find the imposition of a sentence of twelve years was not an abuse of discretion. This assignment of error has no merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Our review of the record reveals error patent on the face of the bill of information. "An information is a written accusation of crime made by the district attorney and signed by him." La.C.Cr.P. art. 384. The bill of information filed in this matter does not contain the signature of the district attorney or one of his assistants. However, by responding to defense motions and by presenting the case at trial, the prosecution fully ratified the filing of formal charges. Moreover, defendant failed to file a motion to quash the bill of information on this ground. See La.C.Cr.P. art. 534(1). Any protection that is afforded to the accused and to society by the requirement that the district attorney's signature appear on the bill of information was fully accorded herein. See State v. White, 404 So.2d 1202, 1205 (La.1981). Therefore, we find the state's failure to sign the bill of information did not constitute reversible error.
[2] The bill of information charges that defendant committed the attempted second degree murder of "Joseph Weaton." Other evidence introduced by the state, including the victim's medical records, reflects that the victim's name was "Joseph Wheaton." In places other than the bill of information, the victim is consistently referred to by that name throughout the record. It does not appear that defendant was unaware of the identity of his alleged victim. We find, therefore, that the record contained a sufficient designation of the individual referred to, and no advantage can be taken of the clerical error in the bill of information. See State v. Bennett, 517 So.2d 1115 (La.App. 1st Cir.1987), writ denied, 523 So.2d 1335 (La.1988).