NORRIS, Judge.
Willie B. Collins was charged by bill of information with simple burglary of a movable, LSA-R.S. 14:62. He proceeded to jury trial and was convicted. The trial judge later denied his motion for a new trial and post verdict judgment of acquittal and sentenced him to ten years at hard labor. Collins now appeals, urging three assignments of error:
(1) The trial court should have granted the motion for new trial and post verdict judgment of acquittal.
(2) The evidence was legally insufficient to convict.
(3) The sentence is excessive.
For the reasons expressed, we affirm.

Facts

On the afternoon of October 11, 1986, Mark Fontana went to work at Brook-shire’s grocery store on Hwy. 165 in Monroe. He drove his father’s 1970 GM pickup and parked it in the lot, leaving the windows rolled down, the doors unlocked and a single barrel shotgun on the gun rack. Shortly afterward, a witness, Mr. Hall, was returning to his own car on the parking lot between 2:00 and 4:00 p.m. when he noticed some suspicious activity around the pickup truck. He saw a green Cadillac El Dorado with its hood up parked alongside the pickup, facing the opposite direction. The Cadillac seemed to be carrying’four men, one of whom was standing by the pickup. Mr. Hall saw the man reach into the open win *1048 dow, take the gun and slide it through an open window into the rear seat of the Cadillac. Suspecting a crime, Mr. Hall pulled his car near the Cadillac to get a better view. He saw the man close the hood, get into the driver’s seat and begin to drive away. He got a good look at the front and left side of the man’s face. Mr. Hall followed the Cadillac through the parking lot and told his wife, who was with him, to copy its license plate number. She did so. He watched the Cadillac exit the parking lot and head south down Hwy. 165.
Mr. Hall then drove back to the truck and left on its windshield a note stating that he had witnessed the burglary and explaining how to reach him. When Mark Fontana returned to the truck later that evening, he found the note and called the sheriff’s department. Dep. Moore investigated the crime and later contacted Mr. Hall.
Dep. Moore testified at trial that when he went to see Mr. Hall, he showed him a photo lineup. Mr. Hall selected the defendant, Willie Collins, as the man who removed the gun from the truck. He could not identify any of the other occupants of the Cadillac. On cross examination, Dep. Moore admitted testifying at the preliminary examination that he thought Mr. Hall had identified Collins only as the getaway driver, not as the actual burglar. However, Dep. Moore explained that his prior testimony was based on notes and his recollection of what Mr. Hall had told him, and his recollection could have been faulty. Mr. Hall did not testify at the preliminary examination.
Mr. Hall testified that the defendant, whom he identified at trial, took the gun from the truck, slid it into the Cadillac’s window, closed the hood and then drove off. He did not recall whether, at the lineup, Dep. Moore asked him to identify the suspect as the burglar or as the driver; if so, he did not recall how he answered. He denied ever telling Dep. Moore that Collins was not the one who actually took the gun. He a,dded that his wife, who was with him when he witnessed the crime, was not called to testify. The Halls now live in Texas.
Mark Fontana testified that neither he nor his father gave anyone permission to enter the truck and take the gun, which has never been recovered. He admitted that he had left the truck’s windows down and doors unlocked.
The defense called three witnesses. The first, Dep. Moore, reiterated that when he testified at the preliminary hearing, he was working from notes and his memory. He would not dispute Mr. Hall’s trial testimony. The second, Wanda Cobbs, was Collins’s former girlfriend. She testified that on the eve of the alleged burglary, Collins was ill with a stomach virus so he stayed at her house in bed that night and most of the next day. His car, a Cadillac Fleetwood (not an El Dorado) stayed in her driveway on Short Madison in West Monroe the entire time. On the day the crime occurred Collins was at Wanda’s house until about 6:00 p.m. when he took her and a neighbor, Sandra Walters, to Jackson’s Bar where, despite his recent bout with the flu, they drank a few beers. She testified that around 6:30 or 7:00 p.m., Collins loaned his car to “this dude named Tick,” whom she did not really know. She left the bar on foot around 8:30 or 9:00. She admitted on cross examination that she had a prior conviction for theft. The third witness, Sandra Walters, testified that Collins’s car stayed at Wanda’s house during the day, that the three of them went to Jackson’s Bar and that Collins gave his car keys to “this guy.” Afterwards she walked to Collins’s sister’s house.
After the defense rested but before the parties gave their closing arguments, Dep. Moore told defense counsel that Mrs. Hall had also been shown a lineup which included Collins’s picture but that she was unable to pick a suspect. Defense counsel did not move for a recess, to reopen the evidence for Mrs. Hall’s testimony or for an admission as to what Mrs. Hall would have said had she been called. Instead he proceeded to argument, charging and verdict. The jury found Collins guilty as charged.
*1049 After the verdict but before sentencing, defense counsel moved for a new trial and for post verdict judgment of acquittal. He alleged that Mrs. Hall’s failure to identify the defendant positively was newly discovered evidence that he could not have presented at trial despite the exercise of reasonable diligence; that the state had not complied with his pre-trial motion for discovery and inspection; and that the new evidence cast reasonable doubt as to the identity of the perpetrator and “probably would have changed the verdict rendered in the case.” At a hearing on the motion, the prosecutor and defense counsel stipulated that if Mrs. Hall were called to testify, she would say that she viewed the lineup and narrowed her choice to two photos, one of which was Willie Collins, but she could not positively say which was the suspect. The prosecutor added that Dep. Moore would testify that one of the two photos she selected was indeed the defendant, Willie Collins. The judge concluded that the evidence was discovered during trial and should have been brought to the court’s attention then; that the evidence would not have changed the verdict; and that the verdict was not contrary to the law and evidence. He denied the motion and later sentenced Collins to ten years at hard labor.

Motion for New Trial

By his first assignment Collins claims he was entitled to a new trial on the basis of newly discovered evidence, because the verdict was contrary to the law and evidence, and because the interests of justice would be served. LSA-C.Cr.P. art. 851(1), (3), (5). He adds that the newly discovered evidence was exculpatory and had been wrongly withheld from the defense, contrary to a discovery motion and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In considering a motion for new trial based on newly discovered evidence, the test applied is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different verdict. State v. Huckaby, 368 So.2d 1059 (La.1979); State v. Motton, 395 So.2d 1337 (La.1981), cert. denied 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). According to the article, evidence qualifies as “newly discovered” if it was not discovered before or during trial, it is available and its late discovery was not due to any lack of reasonable diligence on the part of the defense. Art. 851(3). The trial judge has considerable discretion in evaluating the impact of newly discovered evidence on the verdict and his ruling will be disturbed only when there is a clear abuse of this discretion. State v. Humphrey, 445 So.2d 1155 (La.1984); State v. Motton, supra.
In ruling on the motion, the trial judge found that despite the defense’s contentions, the “newly discovered” evidence was actually discovered during trial. The record shows that Dep. Moore told defense counsel about Mrs. Hall’s failure to make a positive identification on the afternoon of September 28, right after court had recessed for the day; closing arguments were set for the next morning. For purposes of art. 851, evidence is not “newly discovered” after trial unless it comes to light after the verdict is rendered. State v. Motton, supra; State v. Smith, 340 So.2d 247 (La.1976); State v. Howard, 449 So.2d 69 (La.App. 4th Cir.1984). The case of State v. Caillier, 450 So.2d 43 (La.App. 3d Cir.1984), writ denied 456 So.2d 168 (La.1984), relied on by the defense, does not involve an allegation of newly discovered evidence and is clearly inapposite to the instant case.
Upon learning of the evidence the defense could have, by the exercise of reasonable diligence, asked that the case be held open for additional evidence, requested a recess or continuance until Mrs. Hall could be brought in from Texas to testify, or it could have attempted to obtain an admission as to what she would have said if she testified. LSA-C.Cr.P. arts. 708, 710, 765(5). The trial judge intimated that if a timely request had been made, he may have granted the continuance or recess and reopened the case for the additional evidence. R.p. 181. The critical point is that no timely request was made. Instead, the *1050 defense held its information and waited until after the verdict to seek relief. The trial judge should have had the opportunity to rule on the question during trial. If the ruling was adverse, the defense could have lodged an objection. LSA-C.Cr.P. art. 841; see also State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984), writ denied 463 So.2d 1317 (La.1985). Given the procedural background of this case, the trial judge was not in error to conclude that the evidence was not newly discovered and therefore did not entitle the defense to a new trial. See State v. Bright, 105 La. 341, 29 So. 903 (1901).
As for the Brady argument, we acknowledge that the Louisiana Supreme Court has treated failed identifications as discoverable Brady material. See State v. Landry, 384 So.2d 786 (La.1980); State v. Yarbrough, 418 So.2d 503 (La.1982). In both Landry and Yarbrough, however, the defense lodged specific requests for “negative identification.” In the instant case there was no such specific request. See Motion for Discovery and Inspection, R.p.p. 17-21. When the request is only general, in order to give rise to a due process violation, the undisclosed evidence must create a reasonable doubt about guilt that would not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Willie, 410 So.2d 1019 (La.1982), aff'd after remand 436 So.2d 553 (La.1983), and cert. denied 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984). In the context of a general request, a federal court has held that a failed identification is “not clearly supportive of innocence” and need not be disclosed. United States v. Rhodes, 569 F.2d 384 (5th Cir.1978). Similarly, even in the context of a specific request, the Louisiana First Circuit has held that a failed identification is “neutral” evidence, does not create a reasonable doubt as to guilt and need not be disclosed. State v. Vampran, 491 So.2d 1356 (La.App. 1st Cir.1986), writ denied 496 So.2d 347 (La.1986).
According to Mr. Hall’s testimony, he got a close look at the suspect while Mrs. Hall, at his request, concentrated on copying the license plate number. Thus there was a plausible reason why Mrs. Hall might not have been able to identify the suspect positively. See State v. Vampran, supra. Mrs. Hall’s failure to make a positive identification does not, in the face of Mr. Hall’s strong and positive identification, create reasonable doubt as to guilt that would not otherwise exist. Cf. State v. Willie, supra. Moreover, the evidence as stipulated shows that Mrs. Hall narrowed the suspects to two photos, one of which was the defendant; thus her failure to make a positive identification was not tantamount to testimony that “none of the suspects pictured, including the defendant, committed this crime.” See United States v. Rhodes, supra. Thus the evidence was, in the words of the trial judge, “not really exculpatory.” R.p. 181. The trial judge did not abuse his discretion in finding that the evidence was not truly “newly discovered” and that it probably would not have 'changed the verdict of guilty.
The motion for new trial was also based on the claim that the ends of justice would be served by the granting of a new trial. This ground, however, is completely within the trial judge’s discretion. The grant or denial of a new trial on the basis of art. 851(5) is not subject to appellate review. State v. Spears, 504 So.2d 974 (La.App. 1st Cir.1987), writ denied 507 So.2d 225 (La.1987); State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.1984), writ denied 449 So.2d 1345 (La.1984). The trial judge's refusal to grant a new trial is affirmed.

Insufficiency of Evidence

By his second assignment (and by that part of the first that asserts the denial of post verdict judgment of acquittal) Collins claims the evidence was insufficient to support his conviction. He chiefly contends that the state’s eyewitness, Mr. Hall, presented “two widely varying versions of the events” he observed, and that this cast sufficient doubt on his testimony to undermine the verdict.
In order to satisfy due process standards, the record evidence, viewed in light most favorable to the prosecution, must be *1051 sufficient for any rational factfinder to conclude that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Mark Fontana testified that he gave no one permission either to enter the truck or remove any of its contents, but that the gun had been stolen. This establishes the essential elements of the crime of simple burglary. LSA-R.S. 14:62. The remaining issue is the identity of the suspect. The instant record does not support Collins’s claim that the eyewitness, Mr. Hall, gave conflicting versions of what occurred. Mr. Hall testified without equivocation that he saw a man remove the shotgun from the truck, place it in the Cadillac and drive away. He positively identified the defendant, Willie Collins, as the man who did this.
The alleged inconsistency does not arise from Mr. Hall, who never gave any prior testimony or written or recorded statement. Instead, it came from Dep. Moore, who at the preliminary examination, where hearsay evidence is admissible, attributed to Mr. Hall a slightly different rendition of the events. Defense counsel tried to impeach Dep. Moore both in the state’s and his own half of the case. Dep. Moore admitted the apparent inconsistency but explained that it could have resulted from faulty memory, inadequate notes or a misunderstanding. Defense counsel used Dep. Moore’s version of Mr. Hall’s oral statements in an effort to impeach Mr. Hall. At trial Mr. Hall could not recall the deputy’s exact questions or his own exact answers but assured the court that his trial testimony was an accurate account of what he saw. The jury, alerted both to the alleged inconsistencies and to the explanations offered, observed Mr. Hall and decided to accept his direct testimony over the deputy’s hearsay. A rational factfinder was entitled to make this credibility call, and we have no basis for disturbing it.
Viewed in light most favorable to the prosecution, the evidence presented could persuade a rational factfinder beyond a reasonable doubt that Willie Collins entered Mark Fontana’s truck without authorization, with the intent to commit the theft of a shotgun. Jackson v. Virginia, supra. This assignment does not present reversible error.

Excessive Sentence

By his third assignment Collins claims the trial judge erred in failing to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1, especially in giving inadequate weight to the way the victim facilitated the offense. He also contends the sentence of ten years at hard labor, which is near the maximum prescribed for simple burglary, is excessive.
The test of excessiveness is two-tiered. First the record must show the judge took cognizance of the mandatory sentencing guidelines of art. 894.1. The judge is not required to list every aggravating or mitigating circumstance as long as the record shows ample consideration of the guidelines. State v. Smith, 433 So.2d 688 (La.1983). The goal of art. 894.1 is to provide an adequate factual foundation for the sentence, not to produce rigid or mechanical recitation of the factors. Thus even in the absence of full compliance with the article, remand is unnecessary when the record-clearly shows an adequate factual basis for the sentence. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements to be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. McGhee, 469 So.2d 1051 (La.App. 2d Cir.1985).
Our review of the sentencing colloquy shows a thorough compliance with the article. The judge noted the pertinent personal history: Collins is 32 years old, unmarried with two children; he finished the eleventh grade; he has held “on-and-off” jobs in the past, most recently on a used car lot; he was the oldest of six children and grew up in Monroe. The judge then detailed Collins’s prior criminal record, which began with an arrest at age eleven for shoplifting; *1052 as a minor he was twice committed to LTI on other charges; as an adult he was convicted once for burglary and twice for felony theft; there were four convictions for simple escape from jail while serving these sentences; other arrests on charges of felony theft, possession of marijuana, and aiding and abetting a fugitive, had been nol prossed; and he was acquitted on a 1981 charge of aggravated battery. The instant offense was Collins’s fourth felony; for his previous felony, the January 1982 conviction for felony theft, he had drawn six years at hard labor. It is almost superfluous to comment that a criminal record of this magnitude leaves little room for leniency. The judge finally noted that Collins, who was not eligible for probation, is in need of correctional treatment and his incarceration would work hardship on no one but Collins himself.
In mitigation the judge noted that the thing taken, an old shotgun, had only nominal value, and the victim somewhat facilitated the offense by leaving the windows open and the doors unlocked.
In the balance, the trial judge assigned adequate weight to these mitigating factors. The overwhelming influence of the criminal record easily outweighed them. The trial judge’s compliance with the article was satisfactory.
The second tier is constitutional ex-cessiveness. A sentence violates LSA-Const. art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or is nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentencing judge has wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
This crime was not the worst. However, Collins has a serious criminal record that shows a remarkable recurrence of criminal conduct. He has exhibited a great tendency toward crimes of burglary and theft, plus a deplorable history of escaping from his lawful imprisonment. All this suggests an unhealthy character and attitude toward crime. So despite the smallness of the damage resulting from the offense, a heavy sentence was merited for this fourth felony offender, and ten years at hard labor does not shock our conscience or our sense of justice. This assignment does not present reversible error.
Willie Collins’s conviction and sentence are affirmed.
AFFIRMED.