671 So.2d 1155 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Glen P. LINDSEY, Defendant-Appellant.
No. 28016-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
*1157 Cook, Yancey, King & Galloway by Curtis R. Shelton, Shreveport, for defendant-appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Whitley R. Graves, Asst. District Attorney, for plaintiff-appellee.
Before NORRIS and HIGHTOWER, JJ., and CLARK, J. Pro Tem.
NORRIS, Judge.
Glen P. Lindsey was charged by bill of information with armed robbery. La.R.S. 14:64. The jury found him guilty as charged, and he was sentenced to 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal, his conviction and sentence were reversed, and the case was remanded for a new trial.[1] After another trial, a second jury also found Lindsey guilty of armed robbery. The trial court sentenced him to 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence, and with credit for time served. Lindsey *1158 now appeals this conviction and sentence, urging 14 assignments of error.[2] For the following reasons, we affirm.

Facts
The victim, Jack Taylor, described the incident as follows. Around 1:30 a.m. on January 4, 1991, he answered the door of his apartment in Bossier City to find an acquaintance, Debbie Pate, whom he had known for about a month. She spoke briefly to him inside the apartment, and then opened the door to leave. As she stepped outside, two men, later identified as Glen Lindsey and Jamie Blevins, rushed into the apartment. One of the men struck Taylor in the forehead with a tire iron, causing him to stumble backwards and fall onto the bed. Someone immediately placed a pillow over his head so he could not see, ordered him not to move, and stated he had a gun pointed at his head; he felt a hard object pressed against his head. Taylor then heard Pate return and a man ask what she wanted; she responded, "I want everything." The group stole his wallet, television and speakers, video cassette recorder, and his .38 caliber revolver and gunbelt. The man holding him down asked Pate if he should kill him; Pate said no. They then walked him, with the pillow over his head, out of the apartment, and ordered him to continue walking away from them toward the office. He complied, but managed to glimpse the front end of the car as they sped away from the scene.
On January 15, Pate was arrested and charged with armed robbery. She pled guilty to accessory after the fact and was sentenced to two years, with credit for time served. Pate testified at Lindsey's trial, where she recounted the following. She first met Lindsey and Blevins on the night of January 3, 1991. They needed money so she suggested they introduce Becky Pageant, Lindsey's girlfriend, to Jack Taylor, a friend of hers. She had no idea they planned to rob him.
All four drove to Taylor's apartment. Pate alone went inside to tell Taylor that Pageant was waiting outside in the car. Taylor asked her to go get Pageant, and as she stepped outside, Lindsey and Blevins "busted in." She was somewhat unsure whether it was Lindsey who hit Taylor with the crowbar. However, she knew it was Lindsey who held the gun to his head, and asked if he should shoot him. During this time, Blevins was removing Taylor's possessions from the apartment. She testified that Lindsey was holding the gun as they left the apartment.
Blevins was later arrested; he pled guilty to simple robbery pursuant to a plea bargain whereby he received a sentence of four years at hard labor, with two years and 10 months suspended. He also testified at Lindsey's trial. According to Blevins, all four of them were driving around town that night in Pageant's car when Pate stated she knew where they could get some money. She said she wanted to introduce Pageant to her friend Taylor, who "liked to meet new girls." When they arrived at Taylor's apartment, Pate went inside. After about five minutes, Lindsey told Blevins, "Let's go," grabbed a tire iron, and both headed for the apartment. When they entered, Lindsey struck Taylor in the head with the tire iron, knocking him down on the bed. Lindsey then put the pillow over Taylor's head and held the pointed edge of the tool against Lindsey's side. Lindsey hit Taylor with the tire iron several times. Pate was shouting at Blevins to "grab this; get that"; Blevins admitted he took the television, speakers and V.C.R. Blevins saw Pate remove Taylor's gun from the closet and hand it to Lindsey, who held the gun on Taylor until they left. Blevins also heard Lindsey ask if he should kill Taylor. As they were leaving, Lindsey told Taylor not to look back or he would kill him.
Other witnesses for the State included a Bossier City police officer, Fred Gregory, and a friend of Lindsey's, Jack Anderson Michaels, Jr. Officer Gregory investigated the robbery of Taylor's apartment. He testified that when he arrived Taylor was bleeding from the forehead and nose, but had not sustained serious injuries. He testified that *1159 they were unable to lift fingerprints due to the dusty condition of the apartment. Later in the investigation, Officer Gregory searched a Plymouth that was parked at Lindsey's, but belonged to Rebecca McDougal (a.k.a. Becky Pageant). He testified he found a tire tool on the floorboard behind the driver's seat, but was unable to obtain fingerprints, blood, hair or other specimens from it. Officer Gregory arrested Lindsey and questioned him regarding his whereabouts at the time of the robbery. Lindsey claimed he had been at home with Becky Pageant the entire night, and around 3:00 that morning, Pate and Blevins came by to return Pageant's car, which they had borrowed earlier in the evening. They told him they had taken some merchandise from a man in Bossier, and asked if they could keep the car until they disposed of the items. The stolen items were never recovered.
Michaels testified that he and Lindsey had been best friends for 25 years. His former wife, Carla, is presently married to Lindsey. Michaels testified that he visited Lindsey in jail in June 1991, and that during their conversation, Lindsey admitted he had hit Taylor in the head with a tire tool. Michaels also vaguely recalled some mention of a gun. Michaels waited, however, until March or April 1994 to report this conversation to the Bossier Parish District Attorney's Office.
Lindsey neither testified nor offered any witnesses on his behalf.

Assignments Nos. 1 and 2
These two assignments concern a photographic line-up the State conducted in which one co-perpetrator and witness, Pate, was unable to identify another co-perpetrator and witness, Blevins. The State did not provide the line-up to Lindsey. First, Lindsey urges the trial court erred in failing to find that the State had a duty to disclose this material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and La. C.Cr.P. art. 729.3. Second, he contends the trial court erred in overruling his objection at trial and allowing Pate to testify in light of the State's failure to provide the evidence. As a result, Lindsey claims he was denied his constitutional right to confront and cross examine Pate about her inability to identify Blevins. Lindsey also sought a continuance on this ground (and several others), the denial of which is assigned and will be addressed separately.
Under Brady v. Maryland, supra, the State must disclose all evidence material to guilt or punishment and favorable to the accused. The Brady rule has since been extended to cases in which evidence adversely affecting the credibility of state witnesses is withheld from the defense. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The prosecution's duty of disclosure applies irrespective of the nature of the discovery request, and even when a request has not been made. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Evidence is "material" if there is a reasonable probability (sufficient to undermine confidence in the outcome) that disclosure of the evidence would have produced a different result. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
In some instances, a failed identification may constitute Brady material. State v. Landry, 384 So.2d 786 (La.1980); State v. Collins, 540 So.2d 1046 (La.App. 2d Cir.), writ denied 544 So.2d 397 (1989). When a general discovery request is made, as in this case, the test is whether the undisclosed evidence would have created a reasonable doubt that would not otherwise exist. United States v. Agurs, supra; State v. Willie, 410 So.2d 1019 (La.1982), aff'd after remand 436 So.2d 553 (La.1983), and cert. denied 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984); State v. Collins, supra. Reasonable doubt must be determined in the context of the entire record. State v. Johnson, 426 So.2d 95 (La.1983); State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993). Further, a failed identification which is not "obviously exculpatory" or "clearly supportive of a claim of innocence," but rather neutral in nature, need not be disclosed. United States v. Rhodes, 569 F.2d 384 (5th Cir.1978); see also State v. Collins, supra.
Regarding discovery, we stated in our previous opinion in this matter:

*1160 Under Louisiana law, the prosecution is not required to provide unlimited discovery. However, the state must comply with the requirements of Brady and its progeny, and the provisions of the Code of Criminal Procedure pertaining to discovery in criminal cases. Under La.C.Cr.P. art. 729.3, the state has a continuing duty to disclose, even during trial, and the jurisprudence holds that if the state does not comply with this obligation, a defendant's conviction may be reversed if such noncompliance prejudiced the defendant.
State v. Lindsey, supra (citations omitted).
Lindsey urges in brief that had the undisclosed photographic line-up been introduced into evidence, it might have undermined Pate's credibility and altered the outcome of the proceedings. He contends the line-up may have been so "obviously defective"[3] as to lead to the inescapable conclusion that Pate should have been able to identify Blevins, thus entitling the jury to disregard as incredible Pate's testimony regarding Lindsey.
We find, as did the trial court, that Lindsey has failed to demonstrate that Pate's inability to identify Blevins is material and favorable to him. The accused, Lindsey, was not the subject of the line-up. Pate did not misidentify a third party, instead of the accused, as the perpetrator. See and compare State v. Falkins, 356 So.2d 415 (La.1978), cert. denied 439 U.S. 865, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978). Further, Pate gave a plausible explanation for her ability to identify Lindsey, but not Blevins; she testified that she had seen Lindsey several times since the robbery. We find the cases cited by Lindsey plainly distinguished in that each dealt with the state's failure to disclose favorable treatment given to prosecution witnesses. See Giglio, supra (promise of immunity to defendant's coconspirator); State v. Bailey, 367 So.2d 368 (La.1979) (release of witness facing felony charge from prison prior to accused's trial). The instant line-up is neither exculpatory nor supportive of Lindsey's claim of innocence; in fact, the existence of such undisclosed evidence is neutral at best. State v. Vampran, 491 So.2d 1356 (La.App. 1st Cir.), writ denied 496 So.2d 347 (1986). Lindsey has failed to show that the undisclosed evidence creates a reasonable doubt about guilt that would not otherwise exist. Moreover, in light of all the testimony tending to inculpate Lindsey, the relatively insignificant photographic line-up was plainly insufficient to create reasonable doubt. United States v. Agurs, supra.
The record also reveals that Lindsey's counsel was aware of the existence and outcome of the line-up, and cross examined Pate about it. In fact, she admitted that she had been unable to identify Blevins from a photographic line-up. Consequently, the jury was also made aware of the existence and outcome of the photographic line-up, and could thereby determine the proper weight to give Pate's testimony. Lindsey was not prejudiced in not being able to introduce the photographic line-up.
In short, the photographic line-up was not Brady evidence. The State had no continuing duty under the rules of discovery to disclose the information. We conclude that the trial court did not err in declining to order the State to disclose the evidence, or in allowing Pate to testify.

Assignment No. 3
Lindsey contends that the trial court erred in restricting his constitutional right to confront and cross examine the State's witness, Jack Michaels, regarding his alleged bias and interest in testifying against Lindsey. La. Const. art. 1 § 16. In particular, he contests the trial court's denial, under La.C.E. art. 403, of his request to introduce documents pertaining to Michaels's divorce and a subsequent child support enforcement action filed against him.[4] The trial court did rule, however *1161 that he could question Michaels about these matters, and allowed him to proffer the documents.
On direct, Michaels testified to his divorce from Carla, Lindsey's present wife, and his current child support obligation. He testified that there was no judgment against him for overdue child support, and that any disputes had since been resolved. He admitted his present relationship with his former wife was "not good," but stated that it would not influence his testimony. On cross, Michaels admitted that the Bossier Parish District Attorney's Office had recently brought an action against him, on Carla's behalf, for past-due child support. In addition, he conceded he did not inform the DA's office about Lindsey's statement back in 1991 until March or April 1994, after the support action was filed; he denied any causal relation. On redirect, he explained that the State had dropped the matter when he submitted proof of payment; he testified that he provided the receipts before he contacted the office regarding Lindsey's statement. Michaels again stated that the support suit did not influence his decision to report Lindsey's statement.
Despite his ability to question Michaels, Lindsey contends that because he was not allowed to introduce as evidence the domestic suit or child support enforcement action, he was unable to fully confront and cross examine him in an effort to establish bias. Only evidence of direct or personal bias may be admitted or exposed on cross examination; general prejudices or special biases or interests that are either irrelevant to or remote from the issues at hand, are improper for impeachment purposes. La. C.E. art 607 D(1); State v. Robinson, 337 So.2d 1168 (La.1976); State v. Free, 26,267 (La.App. 2d Cir. 9/21/94), 643 So.2d 767, writ denied 94-2846 (3/10/95), 650 So.2d 1175. The prosecution's potential leverage over a witness because of pending criminal charges is a valid area of cross examination. State v. Williams, 618 So.2d 606 (La.App. 2d Cir.), writ denied 625 So.2d 1060 (1993).
In the instant case, defense counsel was allowed to cross examine Michaels at length about all matters pertaining to the divorce and child support enforcement action. Michaels candidly admitted that he had a poor relationship with his wife and that he had been sued for past-due child support. Defense counsel was able to present to the jury testimony from Michaels regarding any connection between the child support suit against him and his subsequent disclosure regarding Lindsey. This testimony was sufficient to alert the jury about Michaels's possible bias. Admitting documentary evidence of Michaels's divorce or the child support enforcement suit against him, both highly remote from the instant criminal prosecution against Lindsey, would be confusing as well as cumulative in light of Michaels's testimony. The trial court did not err in refusing to allow this evidence.

Assignments Nos. 4-7
By these assignments, Lindsey contends that because the State failed to timely disclose several items with respect to Michaels and Blevins, the trial court erred in allowing them to testify at trial. Lindsey objected to their testifying at trial on the same grounds argued for the continuance. R.p. 215. The trial court overruled the objection, and noted Lindsey's exception for the record. Lindsey does not present argument in brief as to each assignment, but contends only that in light of the combined effect of the alleged discovery violations by the State, the court abused its discretion.
Regarding Michaels, Lindsey asserts that the State failed to timely disclose that Michaels had been married to Mrs. Carla Lindsey, and that he owed past-due child support for which suit had been filed. Significantly, Lindsey failed to argue in brief that the State's actions prejudiced him in any manner. Certainly, Lindsey must have known that Michaels was his wife's former husband and that she had filed to collect child support. The record shows that Lindsey's counsel had copies of the pleadings themselves at the motion for continuance, and relied on the existence of such proceedings as grounds for the continuance. Finally, as previously discussed, Lindsey's counsel thoroughly cross examined Michaels at trial on all issues pertaining to his relationship *1162 with Mrs. Carla Lindsey. Assignments 4 and 5 do not present reversible error.
With respect to disclosure of the State's plea bargain with Blevins and Blevins's criminal history, the record shows that the State did, in fact, timely disclose both items to defense counsel. As reflected in its supplemental discovery response, the State disclosed the plea agreement on the day it was entered. The State had provided Blevins's criminal history in connection with the previous trial; the rap sheet was located in the original record which was easily accessible to defense counsel. Nonetheless, the State provided a copy of the rap sheet to defense counsel prior to trial. Finally, Blevins's prior criminal history was brought out at trial by both the State and defense counsel. Assignments 6 and 7 are without merit.

Assignment No. 9
Lindsey contends the trial court erred in denying his motion for a continuance to allow defense counsel sufficient time to prepare for cross examination of Pate, Michaels and Blevins.
A timely filed motion for continuance may be granted, in the discretion of the court, in any case if there is good ground therefor. La.C.Cr.P. art. 712. The denial of a continuance will not be disturbed absent an abuse of discretion. State v. Bourque, 622 So.2d 198 (La.1993); State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Williams, 605 So.2d 686 (La.App. 2d Cir.1992), writ denied 612 So.2d 66 (1993). Unless defense counsel has such minimal time to prepare that the "fairness" of the proceeding is questionable, the defendant must show specific prejudice arising out of the denial of a continuance. State v. Vaccaro, supra; State v. Williams, supra. Whether a denial is justified depends on the circumstances of the case. State v. Bourque, supra.
As previously discussed, the State timely supplied Lindsey's counsel with all discovery relating to Pate, Blevins and Michaels. As noted by the trial court, defense counsel had ample time to prepare for cross examination of these witnesses. Lindsey has failed to show any specific prejudice as a result of the denial of the continuance, and the instant record discloses none. We find no abuse of discretion in the trial court's ruling denying Lindsey's motion for a continuance.

Assignment No. 11
By this assignment, Lindsey urges the trial court erred in denying his motion for a new trial, which was predicated upon the substance of assignments one through nine. La.C.Cr.P. art. 851 (2)-(5). These issues have been fully addressed, and no prejudicial error discovered. The motion for new trial was also based on the claim that the interests of justice would be served by granting the new trial. However, the grant or denial of new trial on this discretionary ground is not subject to appellate review. State v. Collins, supra. The trial court did not abuse its discretion in refusing to grant Lindsey's motion for new trial. State v. Maize, 94-0736 (La.App. 1st Cir. 5/5/95), 655 So.2d 500.

Assignments Nos. 12 and 13
By these assignments, Lindsey urges the trial court erred in imposing an excessive sentence, and in failing to grant his timely motion to reconsider the sentence.
In sentencing, the trial court considered the presentence investigation report (PSI). According to the PSI, Lindsey had an extensive list of prior felony convictions, which included possession of morphine (3 counts), simple burglary (3 separate convictions), simple robbery and aggravated battery, as well as misdemeanor convictions of theft, possession of a controlled dangerous substance, and criminal trespass. The PSI also revealed a significant juvenile record and history of using drugs and alcohol to excess. The trial court noted the numerous occasions on which his parole was revoked or allowed to expire due to new felony convictions.
The trial court noted that Lindsey's crime of conviction and criminal history placed him in grid cell 1A (330-360 months), and that the PSI recommended the maximum; however, the trial court felt it necessary to depart upward from the guidelines based on several *1163 aggravating factors. These factors included (1) that Lindsey had not been out of prison long when he committed this offense; (2) he was a repeat offender; and (3) the cruelty to the victim and Lindsey's lack of rehabilitation despite incarceration in the past. In light of the circumstances, the trial court sentenced Lindsey to 50 years (600 months) imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served.
Under the law in effect at the time of Lindsey's sentencing,[5] the trial court was required to consider the guidelines, but had complete discretion to reject them and impose any sentence within the statutory range which is not constitutionally excessive. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237 (on rehearing). The court needed only to state for the record the considerations taken into account and the factual basis for the sentence. La.C.Cr.P. art. 894.1; State v. Smith, supra. This limited review to the issue of constitutional excessiveness, without regard to whether the trial court employed or deviated from the guidelines. State v. Smith, supra; State v. Walters, 26,647 (La. App. 2d Cir. 12/7/94), 648 So.2d 7.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A district court has wide discretion to sentence within the statutory limits, and such a sentence will not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La.App. 2d Cir. 1/19/94), 631 So.2d 555.
The trial court correctly considered the guidelines, stating for the record the considerations taken into account and the factual basis for the sentence. The statutory term of incarceration for armed robbery is not less than 5 and not more than 99 years at hard labor, without benefit. La.R.S. 14:64. Lindsey's 50-year sentence is within the middle range.
Lindsey urges the aggravating factors cited by the trial court constitute elements of armed robbery, and thus do not support the upward departure from the guidelines. The violence and cruelty toward the victim easily distinguishes the instant armed robbery from the typical case. La.S.G. § 209 B(1), (6). Lindsey momentarily blinded the victim, struck him several times in the head with a tire iron, placed a gun to his head and threatened to kill him at least twice. The victim suffered cuts to the head from Lindsey's beating. In light of the circumstances cited by the trial court and the instant record, Lindsey's sentence is not grossly out of proportion to the offense committed and does not shock our sense of justice. This sentence is also consistent with those imposed by this court and other circuit courts in factually similar cases. See State v. Williams, 536 So.2d 773 (La.App. 5th Cir.1988), writ denied 95-1325 (11/13/95), 662 So.2d 465; State v. Rowe, 489 So.2d 1069 (La.App. 1st Cir.1986); State v. Woods, 494 So.2d 1258 (La.App. 2d Cir.1986). The trial court did not abuse its discretion in sentencing Lindsey.

Error Patent
By his final assignment, Lindsey requested an error patent review. This is performed automatically in all criminal cases. La.C.Cr.P. art. 920(2); State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.), modified on other grounds 624 So.2d 1208 (1993). We note that the trial court informed Lindsey that he had three years "from the finality of the sentence of this Court" to apply for post conviction relief. However, La.C.Cr.P. art. 930.8 provides a prescriptive period of three years after the judgment of conviction and sentence has become final. This defect neither warrants reversal nor a remand for *1164 resentencing. La.C.Cr.P. arts. 921, State v. Cox, 604 So.2d 189 (La.App. 2d Cir. 1992). The trial court is directed to give appropriate written notice to Lindsey within 10 days of the rendition of this opinion and to file proof of his receipt of such notice in the record of the proceedings. State v. Powell, 598 So.2d 454 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992); State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992).
We find nothing else we consider to be error patent.
For the reasons expressed, Lindsey's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] State v. Lindsey, So.2d 618 (La.App. 2d Cir.), writ denied 629 So.2d 417 (1993).
[2] Assignments 8 and 10 were neither briefed nor argued, and are therefore deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied 558 So.2d 1123 (1990).
[3] In brief, Lindsey suggested the photographs could depict, along with Mr. Blevins, four women, four African American men, or four Asian men.
[4] Documents from the domestic suit included (1) a protective order, restraining order and temporary restraining order; (2) a judgment pertaining to the protective orders; (3) judgments on the rule regarding a restraining order, visitation privileges and child support; (4) an answer by Michaels; and (5) the judgment of divorce.
[5] The Felony Sentencing Guidelines were repealed by La.Acts 1995, No. 942, § 3, effective August 15, 1995.