786 So.2d 289 (2001)
STATE of Louisiana, Appellee,
v.
Harold Joe BLACK, Appellant.
No. 34,688-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*291 J. Ransdell Keene, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Donna Frazier Hall, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, CARAWAY & PEATROSS, JJ.
PEATROSS, Judge.
Defendant, Harold Joe Black, was convicted of Distribution of a Controlled Dangerous Substance ("CDS") Schedule II (cocaine) and sentenced, as a second felony offender, to 15 years at hard labor and ordered to pay costs or, in default of payment, to serve 25 days in the parish jail with the 25 days to run concurrent with the hard labor sentence, from which he now appeals. For the reasons stated herein, *292 Defendant's conviction and sentence are affirmed.

FACTS
On January 14, 1998, Agents April Wright and Rick Farris, deputies of the Caddo Parish Sheriff's Office, were working undercover with a confidential informant ("C.I.") in the Lakeside area of Shreveport. The officers and the C.I. had been working the area for several months. On this particular day, the deputies and the C.I. had a tentative plan to go to a house on Laurel Street and purchase narcotics from a suspected dealer with the street name "Boss Hogg."
At trial, Deputy Farris testified that it was approximately 7:00 p.m., and dark, when they arrived at the house on Laurel Street. Deputy Farris, wearing an audio wire, and the C.I. went to the house. Deputy Wright remained in the vehicle, which was positioned across the street from the house, where she could observe any drug buy and respond in case of any problem. The audio wire which Deputy Farris had on his person was being monitored by Deputy Wright and two other officers at another location.
The house was devoid of electricity, but electricity was being "bootlegged" from an auto garage next door. The occupants had run an extension cord from the garage into the house, which powered a single light hanging in the middle of one of the rooms.
Deputy Farris and the C.I. met Defendant on the front porch and accompanied him into the house, but "Boss Hogg" was not in the house. The only occupants in the house were Defendant and a female.
Deputy Farris testified that he asked Defendant for $100 worth of crack cocaine. He was told that there were no drugs in the house. Apparently, there had been a shooting the night before at a nearby house, known to be a crack house, so the drugs were now kept at another house. According to Deputy Farris, Defendant offered to go get the "eight ball" of crack cocaine from "Boss Hogg."[1]
Deputy Wright testified that she saw an individual, whom she identified at trial as Defendant, leave the house and walk around the street corner. She estimated he was gone only a few minutes. She notes, however, that she was distracted by someone who approached the vehicle several times and she may have lost track of time. Deputy Farris estimated that Defendant was gone about twenty minutes. Deputy Farris testified that he and the C.I. spent most of that time talking with the unidentified woman about the recent shooting and checking on Deputy Wright.
Both deputies testified that Defendant returned to the house. Deputy Wright testified that she did not actually see any drug transaction, but heard it over the surveillance transmitter. Deputy Farris testified that, after Defendant returned, Defendant handed him an "eight ball" of crack cocaine, and Agent Farris handed Defendant $100. Defendant then wanted a piece of the "rock" as payment for going out to get it.[2] Deputy Farris testified that he instead gave Defendant an extra $5, for a total of $105. Deputy Farris explained that, once he had made the buy, he could not give a portion back to Defendant because that would have constituted distribution of a CDS on his part. Thereafter, the officer and the C.I. left.
*293 As Deputy Farris rejoined Deputy Wright, he told her that the man from whom he had purchased the drugs was identified as "Harold Joe Black."[3] Agent Farris testified that he had seen Defendant on several other occasions prior to the buy. The rock was tested and found to contain 1.9 grams of crack cocaine with a street value of $190.
Defendant was arrested two months later at his mother's home. The deputies testified that, prior to Defendant's arrest, his identity was confirmed through further investigation in the area. The sworn affidavit in support of the arrest warrant was signed by Deputy Wright. The affidavit contained a handwritten notation that Deputy Wright had witnessed the drug buy. Under cross examination at trial, Deputy Wright admitted that she had not visually witnessed the drug buy, but that the presiding judge had written the statement on the affidavit after ascertaining that she had heard the transaction over the surveillance equipment.
The surveillance audio tape was played at trial. The quality of the tape was very poor, but Deputy Farris testified as the tape was played in court and identified who was speaking. At a point on the tape where a male voice was discussing an "eight ball," Deputy Farris testified that the voice was that of Defendant.
Deputy Farris identified Defendant as the one who handed him the "eight ball" of crack cocaine and who was given the money. Deputy Wright identified Defendant as the individual she saw on the front porch of the house when they initially arrived and later leave and return to the house. She testified that she had seen Defendant on several occasions in the past and had seen him answer to "Harold Joe Black." The State did not call the C.I. to testify.
Defendant called several witnesses. The first group of witnesses, which included one of his former teachers and other residents of the community who knew him, testified that they had listened to the surveillance tape, and the voice discussing the "eight ball" was not Defendant's voice. Although Defendant's mother testified regarding the details of Defendant's arrest, she was never asked by defense counsel if the voice on the audio tape was her son's.
Defendant then called the C.I. who had been present at the January 14, 1998 drug buy. The C.I. testified that he had assisted the police on 200-300 drug buys. He testified that he had known Defendant all of his life and that he was his friend. He testified that he had listened to the voice on the surveillance tape discussing the "eight ball," and it was not Defendant's voice, but thought the voice was "myself." The C.I. further testified that Defendant was present at the drug buy, but the C.I. did not see him hand any drugs to Agent Farris in the house. Instead, the C.I. said it was the unidentified woman. He further testified, however, that it was Defendant who had left to find "Boss Hogg" to get the drugs. The C.I. also identified Defendant as a user of drugs.
At the beginning of the third day of the trial, Thursday, March 23, 2000, counsel for Defendant notified the trial court that, at 2:00 p.m. the previous day, he was given a note by another attorney that Agent Farris might be the same "Agent Farris" who had filed an affidavit in another *294 drug case which misidentified a particular person who had sold drugs to him. The person whom Agent Farris named in his affidavit in the other case was actually incarcerated at the time of the alleged drug deal and could not have possibly been the seller.
At that time, defense counsel moved for a mistrial citing the failure of the State to provide what was clearly Brady and Kyles[4] information. He then asked for a hearing for the assistant district attorney and the defense counsel of the other case to testify. The trial court's initial ruling was that defense counsel had made a showing to allow the recall of Deputy Farris for further cross examination. The trial court further found:
[t]here is no showing as yet that the State had in its possession any Brady material that should have been presented to you in this particular case. If it's shown that the State possessed Brady material that they did not divulge to you then a mistrial might be in order.
The trial court then ordered that Deputy Farris reappear for additional cross examination. On cross examination, in the presence of the jury, Deputy Farris was asked about whether, in the last 18 months to 2 years, he had filed an affidavit for an arrest warrant accusing a particular person of selling drugs, only to later find out that that person was in jail at the time of the alleged drug sale. Deputy Farris admitted that there was an arrest made on a mistaken identity, although he could not recall the person's name and was unsure of the date of the arrest. He testified that the person's full name was not on the arrest warrant, but was listed as a.k.a. (also known as) or fnun/lnun (first name unknown/last name unknown).
When asked about the charges being dismissed, Deputy Farris testified:
A. Yes, sir. When I was told that this individual was somewhere else I called the jail and told them we needed to release him because he wasn't the right one that we have in custody.
Deputy Farris further testified:
A .... Now, I stated there was a mistaken identity and this individual was arrested and once I found out that this was not the individual, that he was in jail when some checking was done, I called our jail facility and told them that we needed to release this individual immediately and that was done.
On redirect examination, Deputy Farris testified:
A. It was my mistake. That's why I called the jail and told them that we needed to release this individual. When we arrested him he kept telling me he was in jail on that day. I said "Tell you what I'm going to do. I'm going to go ahead and take you to jail but when I get to the jail I'm going to find out some information." I made several phone calls and once the information was obtained that this individual was in jail I called our jail and said that guy I just brought up there we need to let him go.
Q. Do you recall the period of time that took place?
A. No, ma'am.
After Deputy Farris testified, defense counsel again moved for a mistrial on the grounds that the State had failed to provide adequate notice to defense counsel of information that Deputy Farris either had *295 a prior mistaken identification or had filed a false affidavit. Defense counsel moved that the trial court order the State to produce the affidavit and the file of the other case and that the assistant district attorney in that case be called to testify about the other case.
The trial court recessed briefly to review case authorities on the issue. When it reconvened, defense counsel again asked for a mistrial, providing as support, an affidavit of stipulations by defense counsel from the other case and testimony of the assistant district attorney who handled the other case.
At that time, the trial court held that, based on its review of the Louisiana authorities on the Brady and Kyles issue, it was inclined to agree with defense counsel that the information about the prior misidentification was Brady information and that the remedies at that point were either mistrial or continuance.[5]
The State objected to the trial court's ruling that the material was Brady material and sought a stay of the proceedings until it could apply for an emergency writ to this court on the issue. The trial was stayed until the following Monday.
This court denied the State's emergency writ in State v. Harold Joe Black, 33,907-KW (La.App.2d Cir.3/24/00), holding that:
[t]he trial court's order to the state to produce what evidence it may have in its possession, relating to the misidentification and resulting arrest of another person in an unrelated case, by the state's witness in this case, is within the discretion of the trial court.
When the case reconvened on the following Monday, March 27, 2000, the trial court stated that defense counsel had not received any information from the defense counsel in the other case, that the court had done an in-camera inspection of the file of the case at issue and that it did not contain an arrest affidavit. It did contain an affidavit for a search warrant, signed by Deputy Farris, which identified a person who he alleged distributed a controlled dangerous substance to him. It also contained a handwritten arrest report showing that that person was arrested. The trial court stated that the district attorney's file in the other case gave no indication of misidentification, that the arrested person pled guilty to a misdemeanor charge and that the felony charge for which he was arrested was rejected. The trial court ordered these documents turned over to Defendant, but not the entire file. At that time, Defendant again moved for a mistrial, arguing that the late production of the information prevented him from obtaining the witnesses and evidence necessary to cross examine Deputy Farris.
Defense counsel further stated that he was also in possession of information that Deputy Farris was the sole identifying officer in another case that the State had dismissed during voir dire and asked the trial court to order the State to produce records for any case in which Deputy Farris was the sole identifying officer and the charge of possession or distribution was dismissed either prior to or during trial. Alternatively, if the trial court would not declare a mistrial, Defendant asked for a recess until he could have sufficient time to properly investigate the material which, at *296 that point, had not been tendered to him. The trial court denied each of the requests.
The trial court indicated that the reasons for its ruling requiring the production of documents from the file which contained a misidentification was that (1) the evidence at that point was that only one person, Deputy Farris, had identified Defendant as the person who distributed cocaine; (2) there was testimony and an admission by Deputy Wright that the language in a search (arrest) warrant that she had witnessed a hand-to-hand transaction was incorrect; (3) and, given the testimony of the two officers, a Brady obligation and a Kyles obligation existed to divulge to Defendant a misidentification previously made by Deputy Farris. At the time of this ruling, neither Defendant, the State nor the witness had any copies of any information regarding this other arrest.
The trial court ordered the trial to proceed forward. Defendant chose not to recall Deputy Farris for further cross examination. After deliberations, the jury found Defendant guilty of distribution of crack cocaine.
DISCUSSION

Assignment of Error Number One: Upon repeated motions for a mistrial after the defense had shown during the trial that exculpatory evidence existed which had not been divulged and which during the trial the State partially succeeded in keeping from the defendant, the Trial Court erred by not granting a mistrial.

Assignment of Error Number Two: Article 1, Section 16 of the Louisiana Constitution guarantees an accused a fair trial. When the State only has one witness who can identify the defendant as having committed the crime and the State does not reveal that its witness had misidentified other defendants in the exact same time period as this offense had allegedly occurred, a fair trial has not occurred. A mistrial should have been granted.

Assignment of Error Number Three: When the State discovers during a trial that its chief witness has misidentified individuals in other cases, the late, partial and grudgingly delivery of exculpatory material concerning the credibility of its chief witness does not fulfill the duty of the State to provide all exculpatory material in order that a defendant can be prepared for trial. A mistrial should have been granted.

These assignments of error are related and were argued together in briefs. They will be discussed as one assignment of error.

Brady/Kyles Material
It should be noted that we do not question whether the specified material is Brady and Kyles material. The trial court is in the best position to weigh the evidence and testimony of the witnesses, and its determination that particular evidence or records should have been provided to Defendant under Brady and Kyles will not be reversed, absent an abuse of discretion.
The trial court stated in its reasons for its holding:
THE COURT: Let me say by way of further explanation the reason the Court ruled as it did in this particular case is we've got, so far, one person, Agent Farris, who identified the defendant as the person who distributed cocaine to him.[6] We have testimony and admission under oath by another officer that language in an affidavit for a search warrant *297 was misinterpreted, misunderstood or was transposed wrong or just wrong, that is the indication was that she had witnessed a transaction when she had not witnessed the transaction as far as the hand-to-hand exchange that is alleged by Agent Farris. Under those specific and narrow circumstances that's why I ruled that the State had an obligation to divulge under this circumstance where this defendant is looking at a minimum of five years without benefit of probation, parole or suspension of sentence and a maximum of thirty years hard labor, in this particular situation given the testimony by two officers that a Brady obligation and a Kyles obligation existed to divulge to defense misidentification previously by Agent Farris.
Under Brady, supra, the State must disclose all evidence material to guilt or punishment and favorable to the accused. The Brady rule has since been extended to cases in which evidence adversely affecting the credibility of state witnesses is withheld from the defense. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
The state's duty of disclosure applies irrespective of the nature of the discovery request and even when a request has not been made. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Evidence is "material" if there is a reasonable probability (sufficient to undermine confidence in the outcome) that disclosure of the evidence would have produced a different result. Brady, however, does not require that the state deliver its entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive him of a fair trial. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
In some instances, a failed identification may constitute Brady material. State v. Landry, 384 So.2d 786 (La.1980); State v. Collins, 540 So.2d 1046 (La.App. 2d Cir.1989), writ denied 544 So.2d 397 (La.1989). When a general discovery request is made, as in this case, the test is whether the undisclosed evidence would have created a reasonable doubt that would not otherwise exist. United States v. Agurs, supra; State v. Willie, 410 So.2d 1019 (La.1982), aff'd after remand 436 So.2d 553 (La.1983), and cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984); State v. Collins, supra. Reasonable doubt must be determined in the context of the entire record. State v. Johnson, 426 So.2d 95 (La.1983); State v. Wiley, 614 So.2d 862 (La.App. 2d Cir. 1993). Further, a failed identification which is not "obviously exculpatory" or "clearly supportive of a claim of innocence," but rather neutral in nature, need not be disclosed. United States v. Rhodes, 569 F.2d 384 (5th Cir.1978); see also State v. Collins, supra.
Regarding discovery, we have previously stated:
Under Louisiana law, the prosecution is not required to provide unlimited discovery. However, the state must comply with the requirements of Brady and its progeny, and the provisions of the Code of Criminal Procedure pertaining to discovery in criminal cases. Under La.C.Cr.P. art. 729.3, the state has a continuing duty to disclose, even during trial, and the jurisprudence holds that if the state does not comply with this obligation, a defendant's conviction may be reversed if such noncompliance prejudiced the defendant.
State v. Lindsey, 28,016 (La.App.2d Cir.4/3/96), 671 So.2d 1155.
*298 It is clear from the record that, at the time the request was made, the trial court properly conducted the Brady analysis and properly determined that the material was discoverable and relevant to the trial of Defendant. Further, the trial court properly denied Defendant's request for other files from the district attorney's office. At no time did Defendant provide the trial court with a reasonable description of what the contents of those other files might entail so as to show that it would not be cumulative.

Mistrial
In addressing the propriety of the trial court's refusal to grant a mistrial, we turn to La.C.Cr.P. arts. 729.5 and 775. La. C.Cr.P. art. 729.5 provides, in pertinent part:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter [Discovery and Inspection] or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The article is permissive and does not mandate any particular remedy. La. C.Cr.P. art. 775 states, in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
* * *
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
Mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Sepulvado, 359 So.2d 137 (La. 1978); State v. Stills, 600 So.2d 134 (La. App. 2d Cir.1992). Failure to comply with discovery merits mistrial only when the state's conduct substantially affects the defendant's right to prepare a defense, State v. Mitchell, 412 So.2d 1042 (La.1982); State v. DeMoss, 582 So.2d 964 (La.App. 2d Cir.1991), or when it rises to the level of a legal defect.
Trial courts may offset the effect of late disclosure by calling a recess or granting a continuance. State v. Ashley, 463 So.2d 794 (La.App. 2d Cir.1985); State v. Busby, 464 So.2d 262 (La.1985), cert. denied, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165 (1985). The trial court has wide discretion in fashioning a remedy. State v. Knighton, 436 So.2d 1141 (La. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). The propriety of the remedy depends on the circumstances of the case. State v. Norwood, 396 So.2d 1307 (La.1981).
Defendant argues that he did not become aware of the Brady material until the third day of trial. It is obvious that the assistant district attorney trying the case also had no personal knowledge of this other case. Of course, lack of personal knowledge does not excuse the high responsibility to discover that which belongs to the State:
A prosecutor has a duty to learn of any favorable evidence known to anyone acting on the government's behalf, including the police. But whether or not this obligation is met, the prosecutor is still responsible for failing to disclose `known, favorable evidence rising to a material level of importance.' *299 State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819 (quoting Kyles, 514 U.S. 419, 115 S.Ct. at 1567-68, 131 L.Ed.2d 490).
The record shows that, subsequent to the discovery of possible Brady material, the trial court attempted several remedies to resolve the problem. First, it made a preliminary ruling to provide counsel guidance. Next, it allowed the examination of the prosecuting attorney from the prior case and the recall of Deputy Farris for additional cross examination. It then continued the trial for several days to allow the attorneys to find evidence and to seek supervisory writs. It then did an in camera review of the State's file and ordered the production of certain portions. Lastly, it offered to allow Defendant to again recross Deputy Farris, albeit with restrictions. Under the circumstances, the fact that Deputy Farris had previously misidentified another defendant in another case appears inconsequential and does not rise to a level that would warrant a mistrial.
We further find that Defendant's assignments of error urging misidentification are without merit. If only Deputies Farris and Wright had testified, then a misidentification argument might have merit. The evidence, however, did not stop with only those witnesses. The C.I., who testified on Defendant's behalf, corroborated the testimony of Deputies Farris and Wright, placing Defendant at the house where the drug deal occurred and making Defendant a principal in the transaction.
The C.I. had known Defendant all of his life and they were friends. He clearly identified Defendant at the scene of the drug buy. He identified Defendant as a drug user and stated Defendant was part of the transaction:
Q. Mr. Bishop, I'm Donna Hall and I have a few questions for you. Who were the people that were present at the time the transaction took place?
A. Me and Rick and this girl and Harold Joe.
Q. So you admit that [D]efendant was present?
A. When we was in there all of us were in the house together.
Q. Isn't it true that [D]efendant left the house?
A. Yeah.
Q. And that he left to go get the dope?
A. Well he didn't bring no dope back.
Q. Did he go to get the dope?
A. Yeah. He went to look for Boss Hogg, that's who we went come (sic) for in the first place.
Defendant was convicted of distribution of C.D.S., Schedule II (cocaine), in violation of La.R.S. 40:967(A)(1), which provides, in pertinent part:
§ 967. Prohibited actsSchedule II, penalties
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
For the purposes of addressing the issues before this court, some definitions are relevant:
La.R.S. 40:961(10) "Deliver" or "Delivery" means the transfer of a controlled dangerous substance whether or not there exists an agency relationship.
La.R.S. 40:961(13) "Dispense" means to deliver a controlled dangerous substance to the ultimate user or human *300 research subject by or pursuant to the lawful order of a practitioner, including the packaging, labeling, or compounding necessary to prepare the substance for such delivery.
La.R.S. 40:961(14) "Distribute" means to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.
A defendant is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipients. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Manning, 30,809 (La.App. 2d Cir. 6/24/98), 715 So.2d 668; State v. Hubbard, 30,604 (La.App. 2d Cir. 4/8/98), 711 So.2d 393. The State must show (1) "delivery" or "physical transfer," (2) guilty knowledge of the controlled dangerous substance at the time of transfer and (3) the exact identity of the controlled dangerous substance. State v. Manning, supra.
As a general rule, the law of principals applies to all crimes, including those for the offense of narcotics distribution, defined as the "delivery" or transfer of possession and control over controlled substances. La.R.S. 40:961(9) & (13); State v. Martin, 310 So.2d 544 (La.1975). In Louisiana, an intermediary who arranges for, or facilitates, the transfer of narcotics from the seller to the buyer may be charged and punished as a principal in the act of distribution. State v. Goins, 568 So.2d 231 (La. App. 3rd Cir.1990), writ denied, 573 So.2d 1117 (La.1991); State v. Parker, 536 So.2d 459 (La.App. 1st Cir.1988), writ denied, 584 So.2d 670 (La.1991); State v. Hutchins, 502 So.2d 606 (La.App. 3rd Cir.1987); State v. Celestine, 95-1393 (La.1/26/96), 671 So.2d 896; but see State v. Parker, 627 So.2d 210 (La.App. 4th Cir.1993); cf. State v. Mallery, 364 So.2d 1283 (La.1978), cert. denied, 442 U.S. 940, 99 S.Ct. 2881, 61 L.Ed.2d 310 (1979).
Although intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Sepulvado, 93-2692 (La.4/8/96), 672 So.2d 158, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996). In the present case, Defendant's intent to distribute cocaine is manifested by his actions: (1) his presence in a known crack house; (2) his apparent acting on behalf of "Boss Hogg," the intended drug dealer; (3) his leaving the house to go get drugs or arrange for them; (4) the drug buy was on hold until he returned from seeing "Boss Hogg;" (5) his presence at the actual exchange of the drugs for money; (6) his solicitation for a piece of the cocaine or money for going to get it; and (7) the C.I. providing the name "Harold Joe Black" at the end of the buy when the procedure was to state the seller's name on the surveillance tape.
Deputy Farris testified that Defendant handed him the drugs. The C.I. was never able to definitively identify who in fact made the exchange of drugs and money with Deputy Farris. Assuming, arguendo, that Defendant was not the individual who actually handed Deputy Farris the cocaine and discounting the testimony of Deputy Farris, viewing the remaining evidence in a light most favorable to the State, we find it clear that Defendant was acting as an intermediary to facilitate a transfer of cocaine to a buyer and was, therefore, a principal in the distribution of that cocaine.
We accord great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d *301 1333; State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In fact, absent internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual finding. State v. Gradick, 29,231 (La.App. 2d Cir.1/22/97), 687 So.2d 1071; State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760 and 98-0282 (6/26/98), 719 So.2d 1048; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). The trier of fact could have easily reasonably found that Defendant was guilty of distribution of cocaine. Stated another way, the jury could have found Defendant guilty without relying on the identification testimony of Deputy Farris.

CONCLUSION
For the foregoing reasons, the conviction of Defendant, Harold Joe Black, and the corresponding sentence imposed on him are affirmed.
AFFIRMED.
NORRIS, C.J., concurs in the result.
NOTES
[1] An "eight ball" of cocaine is an eighth of an ounce of cocaine, be it in powder or crack form.
[2] When powder cocaine is transformed into crack cocaine, it is sold in solid pieces referred to as "rocks."
[3] As Agent Farris and the C.I. were getting into the automobile after the drug buy, the C.I. identified Defendant on the surveillance tape as "Harold Joe Black." Agent Farris testified that it was done to identify on tape the person who sold him the cocaine. The C.I. testified that he was only answering Agent Farris' question of who was also in the house at the time of the sale.
[4] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
[5] Although the trial court used the term continuance, procedurally it would have been a recess, since a continuance cannot be granted once a trial has commenced. La.C.Cr.P. art. 708 states:

A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
[6] We note that the trial court made this ruling prior to the testimony of the C.I. in which he placed Defendant at the scene of the transaction.