LOLLEY, J.
11 This criminal appeal by the defendant, Stephen Michael McGill arises from the First Judicial District Court, Parish of Caddo, for the State of Louisiana. Following a jury trial, McGill was convicted of aggravated second degree battery, in violation of La. R.S. 14:34.7; subsequently, he was adjudicated a fourth-felony offender and sentenced to life imprisonment at hard labor without benefits. The defendant now appeals. For the following reasons, we affirm the conviction, but vacate the habitual offender adjudication and sentencing and remand for further proceedings.
Facts
On March 8, 2014, an anonymous caller to 911 reported that Cynthia Darby was being beaten by McGill at a residence on Ranch Lane in Shreveport, Louisiana. The caller reported that McGill was armed with a knife. The police responded to the home and found Darby severely beaten with a stab wound to her left chest/shoulder area. McGill consented to a search of the residence and produced a knife out of his boot. He was taken into custody, and Darby was transported to a hospital for treatment. She identified McGill as her attacker. McGill was arrested and charged by bill of information, with aggravated second degree battery.
After a sanity commission found McGill competent to proceed, a jury trial commenced with McGill representing himself, assisted by indigent defender appointed stand-by counsel. During the course of the trial, the trial court granted McGill’s request that his stand-by counsel take over his representation, and for the remainder of the trial, McGill was represented by counsel. At the conclusion of the evidence, the jury found McGill guilty as ^charged. McGill’s motion for new trial and motion for post-verdict judgment of acquittal were denied.
The state filed a habitual offender bill of information, and McGill was subsequently adjudicated a fourth-felony offender and sentenced to the mandatory term of life imprisonment, without benefit of probation, parole or suspension of sentence. A motion to reconsider sentence was denied, and this appeal ensued. McGill’s appellate counsel urges four assignments of error, and McGill has filed a pro se supplemental brief urging six additional errors.
Discussion

Sufficiency of the Evidence/Post Verdict Judgment of Acquittal

On appeal, McGill argues that the evidence was insufficient to convict him of aggravated second degree battery, because the only evidence inculpating him was Darby’s testimony. McGill states that there was no direct evidence that he had the requisite specific intent or medical records proving that Darby actually suffered a stab wound inflicted by a knife or the severity of any such wound. Additionally, McGill urges that because there was insufficient evidence to convict, the trial court erred in denying his motion for post-verdict judgment of acquittal. We disagree.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the review *1186 ing court should first determine the sufficiency of the evidence. State v. Lewis, 48,-373 (La.App. 2d Cir. 09/25/13), 125 So.3d 482.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential ^elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2d Cir. 01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2d Cir. 01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir. 02/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,786 (La.App. 2d Cir. 01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/06/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir. 09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La. 03/28/03), 840 So.2d 566, 2002-2997 (La. 06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App. 2d Cir. 02/13/08), 975 So.2d 753. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-0213 (La. 01/19/06), 921 So.2d 94.
Louisiana R.S. 14:34.7 defines aggravated second degree battery and states in pertinent part:
A. Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury.
*1187 B. For purposes of this Section, the following words shall have the following meanings:
* * #
(3) “Serious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the) function of a bodily member, organ, or mental faculty, or a substantial risk of death.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Fields, 42,761 (La.App. 2d Cir. 01/09/08), 973 So.2d 973, writ denied, 2008-0469 (La. 09/26/08), 992 So.2d 983. Specific criminal intent is that state of mind which exists when circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proved as a fact; it may be inferred from the circumstances of the transaction and the defendant’s actions. State v. Bishop, 2001-2548 (La. 01/14/03), 835 So.2d 434.
The testimony of a victim alone is sufficient to convict a defendant. State v. Drake, 46,232 (La.App. 2d Cir. 06/22/11), 71 So.3d 452. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. Id.
A post-verdict motion of acquittal shall be granted only if the trial court finds that the evidence viewed in the light most favorable to the state, does not reasonably permit a finding of guilty. La. C. Cr. P. art. 821(B).
Here, the evidence presented at trial was sufficient for the jury to find McGill guilty of aggravated second degree battery. McGill’s conviction was based on pertinent testimony and evidence as follows.
Officer Kedrian Tilmon, of the Shreveport Police Department, testified, that on March 8, 2014, he was dispatched to 9475 Ranch Lane in response to a 911 call reporting that a female was being beaten at that address. The caller reported -that McGill was the offender and was armed hwith a knife. Officer Tilmon testified he and another patrol officer, Officer Mabry, approached the residence. Officer Tilmon stated that McGill answered the door and initially denied there was another individual in the residence, but then advised that a female had been there and had left. He finally admitted that Darby was ■ inside. Officer Tilmon noted that McGill had a cut on his am and what appeared to be dried blood. McGill attempted to re-enter the home and Officers Tilmon and Mabry detained him and McGill produced' a knife out of his boot. Officer Tilmon testified that the tip of the knife had dried blood on it. McGill was placed in the back of the patrol car.
According to Off. Tilmon, she stayed with McGill while Off. Mabry went into the residence to look for an injured person. Officer Mabry made contact with Darby in the home. Medical assistance was called, and Off. Tilmon entered the residence. Officer Tilmon testified that he observed Darby’s injuries and related that Darby appeared to be disoriented and “would barely speak.” Darby told officers she had had an accident, and she was transported to the hospital.
Officer Tilmon further testified that two other individuals, Kristen Stone and Chad Gray, were in the residence but denied seeing or hearing anything. Both individuals stated that they were shocked to see Darby’s condition. Officer Tilmon testified that a third individual, Dana West, was located hiding in a storage shed nearby. According to Off. Tilmon, West indicated that she had arrived at the residence 15-20 *1188 minutes before the police and that she had seen Darby’s injuries.
Officer Tilmon also testified about the condition of the residence. He described blood spattered on the walls, floor and couch, in the den and the 17bathroom. Officer Tilmon testified that the bathtub was full of water and what appeared to be blood settled at the bottom. There was blood on the bathtub frame and bloody clothing in the bedroom.
During Off. Tilmon’s testimony, the entirety of three CDs containing the audio and video recordings from his vehicle recording device were introduced and played for the jury. The recordings spanned- the entire three-hour investigation and include audio and video footage in front of (outside) the patrol car and in the backseat where McGill was seated.
Detective Michael Tyler, of the domestic violence unit of the Shreveport Police Department, testified next. Detective Tyler responded to a call from Off. Tilmon and went directly to University Health Hospital where Darby had been taken. Detective Tyler testified that he found Darby to be incoherent and receiving treatment making it impossible to interview her. Detective Tyler corroborated Off. Tilmon’s testimony regarding the swelling and bruising to Darby’s face and head and the stab wound to her left chest/shoulder area. Detective Tyler testified that he was able to speak with Darby the following day when she was in ICU, and she told him, “he [referring to McGill] did this to me.”
Detective Tracy Mendels of the Shreveport Police Department was accepted by the trial court as an expert in the field of crime scene investigation and analysis, specifically bloodstain pattern analysis. Detective Mendels testified that she arrived at the scene and obtained verbal and written consent from McGill to search the residence. According to Det. Mendels, McGill’s demeanor was “very good,” and he was “rather calm.” She testified that McGill smelled of alcohol, but was lucid and aware and “knew what was going on.” Detective Mendels observed blood on McGill’s Isdothing and injuries to his hands, including small cuts and abrasions, and blood on his forehead.
Detective Mendels testified that she was given custody of the knife, and testing confirmed that there was blood on the knife. The knife was introduced and" shown to the jury. In addition, Det. Mendels explained that testing confirmed blood was present on the kitchen door frame, couch cushions in the den, towels in the bathroom and a spatter on the wall behind the couch which indicated that someone was struck by an object. Detective Mendels testified that the object could have been a fist and she explained that there had to be at least two strikes for á blood spatter to occur. She described what she observed to be blood throughout the house and in the bathtub, explaining that it appeared someone had been trying to “clean up” in the bathroom. The detective also found a bloody tank top in the bedroom that had a small tear in the upper left area which, she testified, was consistent with a knife cut. Detective Mendels opined that her observations, including McGill’s condition and blood in the residence, were consistent with a physical altercation. She explained that the blood spatter on the wall behind the couch was consistent with a right-handed person coming down from above and striking another person.
Alice Brown, who made the 911 call, also testified, explaining that she and her brother had lived at the Ranch Lane residence for a few weeks with Darby, but had moved out over disagreements with McGill. According to Brown, she was at her mother’s house on the afternoon of March 8, 2014, when West, McGill and Darby pulled into the driveway. According *1189 to Brown, she could see Darby, who was seated in the middle of the front seat of the pickup truck, and she observed her swollen and bruised face and eyes. |flBrown testified that McGill was holding a knife and said, “he beat the bitch-he beat the bitch and that he tried to kill her,”.Brown testified that after her mother made the three leave, Brown called 911 because she believed Darby’s life was in danger.
Darby testified that she, Brown, and Brown’s brother had moved in with McGill in January 2014, because they had nowhere else to live. She began a romantic relationship with McGill shortly thereafter. Darby testified that McGill began to accuse her of cheating on him and all day on Saturday, March 8, he slapped and hit her and stabbed her in the chest. She testified that her eyes were swollen shut, her lips and jaw were injured, and she was bleeding from the head. Darby suffered extensive and permanent injuries, including a brain bleed and placement of a plate in her skull. Her injuries required three brain surgeries. As a result of her brain injury, Darby testified she suffers from limited vision, memory loss, and walks with the assistance of a walker.
After the state rested, McGill testified on his own behalf. McGill claimed that he, West and Darby were looking for drugs that afternoon. He explained that they went to two houses, including Brown’s mother’s house, and he corroborated that Darby was seated in the middle of the front seat of the pickup truck. McGill denied ever striking Darby, instead insisting that she had gotten into an altercation with a “Mexican” woman at one of the drug houses they visited that afternoon. He stated that he broke the fight up and was injured in the melee.
McGill explained that he did not want to tell Off. Tilmon that Darby was in the residence, because they had been doing drugs. McGill stated that Darby was in the bathroom “running a bath” when the police showed up. He 110attempted to explain the injuries to his hands by claiming a mental disorder that causes him to cut himself. McGill described Darby’s condition after the fight with the “Mexican” woman:
She was walking fine and-she was bruised up, but she was cleaned up. She-you know, she didn’t look that bad. You know, she was swole up, you know. I looked worse. She was coherent, you know. Well, as much as you can be when you’ve done drunk a half gallon of whiskey, you know.
McGill claimed that if he had beaten her, he would have been “covered in blood.”
Finally, McGill testified that Brown lied for revenge and Off. Tilmon lied as well. He further claimed the assistant district attorney was lying in order to obtain a 99 percent conviction rate. McGill stated that he “liked” Det. Mendels, but he believed that she was laboring under a lack of information in forming her opinions.
In this case, the described evidence supports the jury’s reasonable finding that McGill used a dangerous weapon, a knife, in causing the serious bodily injuries to Darby. The jury reasonably credited the testimony of the police officers, Brown, and most importantly, the victim herself. Officers Tilmon and Tyler described seeing a wounded Darby at the residence and the hospital, respectively. Officers Tilmon and Mendels established that the residence appeared to be the scene of a crime with an abundance of blood spattered, and McGill’s condition also appeared to be consistent with someone involved in a physical altercation. Further, the victim’s testimony implicated McGill in the crime against her. The jury was clearly within its discretion in discrediting the self-serving and disingenuous testimony of McGill.
| nAdditionally, the circumstances of this protracted and severe beating, coupled *1190 with Darby’s testimony that McGill accused her of cheating on him and Brown’s testimony that McGill admitting “beating the bitch,” are more than sufficient to support a finding of specific intent. Likewise, this evidence, viewed in the light most favorable to the state, clearly permits a finding of guilty, thus, the defendant’s post-verdict motion of acquittal was properly denied. These assignments of error áre without merit.

Habitual Offender Adjudication

McGill argues, and the state concedes, that his adjudication as a fourth-felony offender based on the repeated use of predicate offenses constitutes double enhancement. After a hearing, McGill was adjudicated a habitual offender based on the following predicate offenses:
• Aggravated battery, Criminal Docket No. 168,402: pled guilty on May 25, 1994; four years at hard labor, three suspended with three years’ probation;
• Possession of firearm by convicted felon, Criminal Docket No. 189,131: convicted August 20,1997; ten years at hard labor;
• Possession of schedule II CDS, Criminal Docket No. 257,640: pled guilty on September 10, 2007; five years at hard labor; and,
• Attempted possession of a firearm by convicted felon, Criminal Docket No. 290,195: pled guilty on October 28, 2010; five years at hard labor.
McGill argues that the aggravated battery conviction in Docket No. 168,402 should not have been used in the multi-bill, because it was the predicate offense for the possession of a firearm by convicted felon conviction in Docket No. 189,131. He further argues that the possession of a firearm by convicted felon conviction in Docket No. 189,131 should not have been used in the multi-bill because it was used as the predicate offense for the 1^attempted possession of a firearm by a convicted felon in Docket No. 290,195. We agree.
In State v. Baker, 2006-2175 (La. 10/16/07), 970 So.2d 948, the Louisiana Supreme Court held that a sentence imposed for possession of a firearm by a convicted felon may be enhanced under the habitual offender law, as long as the prior felony conviction used as an element in the firearms conviction is not also used as a prior felony conviction in the habitual offender bill of information. We applied this reasoning to subsequent convictions for possession of marijuana in State v. Brooks, 43,613 (La.App. 2d Cir. 10/29/08), 997 So.2d 688, 692, writ denied, 2008-2973 (La. 12/18/09), 23 So.3d 930, stating:
The court in Baker found nothing in the purpose of La. R.S. 14:95.1 that would prevent enhancement of a penalty imposed under its provisions. The same is true of La. R.S. 40:966(E). The Baker court ultimately concluded that a genuine construction of La. R.S. 14:95.1 would allow a sentence imposed under the statute to be enhanced under the habitual offender law as long as the prior felony conviction used as an element of the firearms conviction is not also used as a prior felony conviction in the habitual offender bill of information. Applying that reasoning to the instant case, we conclude that a sentence for possession of marijuana, third offense, can be enhanced under the habitual offender law as long as none of the marijuana convictions are used as prior felony convictions in the habitual offender bill of information.
McGill’s adjudication as a fourth-felony offender constitutes double enhancement under Baker,supra, and Brooks, supra. The record shows that the aggravated battery conviction in Docket No. 168,402 was used as an element in the possession of a firearm by |13a convicted felon in Docket *1191 No. 189,131 and was also used as a predicate in the habitual offender bill. Likewise, the possession of a firearm by a conviction felon in Docket No. 189,131 was used as an element in the attempted possession of a firearm by a convicted felon in Docket No. 290,195 and also used as a predicate in the habitual offender bill. Considering that these offenses were used as elements to subsequent offenses and then as predicate offenses in the habitual offender bill, the trial court erred. Accordingly, the habitual offender adjudication and sentence should be vacated and the case remanded for further proceedings. So considering, the assignment of error arguing excessive sentence is pretermitted.
Pro Se Assignments of Error
In addition to the assignments of error brought by appeal counsel, McGill brings several pro se assignments of error.

Waiver of Counsel at Trial

McGill’s first pro se assignment addresses a claimed involuntary waiver of counsel. McGill argues that he was forced to choose between incompetent and unprepared counsel and self-representation. He claims that his initial court-appointed counsel failed to make motions or obtain evidence, including medical reports and DNA reports.
The record reflects that, on November 7, 2014, McGill filed a “Motion to Represent Myself.” In that motion, he maintained that his appointed counsel seemed “to have too many clients to adequately represent” McGill and, because the sanity commission found him competent, McGill desired to represent himself. On January 28, 2015, McGill filed a “Motion to Appoint New Counsel,” again asserting the incompetence of appointed counsel and seeking either to self-represent or a new appointment of competent counsel. The minutes indicate that the motion to self-represent was granted in open court, for reasons orally assigned on January 5, 2015.
| uFrom that date forward, appointed counsel performed as stand-by counsel to McGill until McGill requested otherwise during trial.
McGill’s argument is baseless. Appointed counsel filed appropriate motions, including one for a sanity commission. He conducted appropriate discovery and discussed plea offers with McGill. McGill’s primary complaint appears to be that appointed counsel failed to adopt all of his pro se motions, which were of questionable merit. Notably, when McGill was asked at the hearing on his motion why he wanted to represent himself, none of his reasons related to inadequacies of his appointed counsel. This assignment of error is of no merit.

Brady and Rules of Professional Conduct Violations

In two other assignments of error, McGill claims Brady violations in that the state failed to disclose medical records, DNA reports and lab reports. He further asserts that the assistant district attorney violated Rule 3.3 of the Rules of Professional Conduct by allowing false testimony from Det. Tyler and Officer Tilmon.
Suppression by the prosecution of evidence favorable to an accused upon his request for such evidence violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Carter, 2010-0614 (La. 01/24/12), 84 So.3d 499, cert. denied, Carter v. Louisiana, — U.S. —, 133 S.Ct. 209, 184 L.Ed.2d 40 (2012); State v. Moran, 47,804 (La.App. 2d Cir. 04/10/13), 135 So.3d 677, writ denied, 2013-1052 (La. 11/15/13), 125 So.3d 1101.
11fiThe term “Brady violation” is sometimes used to refer to any breach of the broad obligation to disclose exculpate- *1192 ry evidence. State v. Carter, supra. Under Brady, the state must disclose all evidence material to guilt or punishment and favorable to the defendant. State v. Black, 34,-688 (La.App. 2d Cir. 05/09/01), 786 So.2d 289, writ denied, 2001-1781 (La. 05/10/02), 816 So.2d 831. There are actually three components of a true Brady claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. State v. Carter, supra.
Evidence is material for Brady purposes if there is a reasonable probability, sufficient to undermine confidence in the outcome, that disclosure of the evidence would have produced a different result. State v. Black, supra. The question to be answered is whether the undisclosed evidence would have created a reasonable doubt that would not otherwise exist, with reasonable doubt being determined in the context of the entire record. State v. Black, supra.
Rule 3.3 of the Rules of Professional Conduct, Candor Toward the Tribunal, provides, inter alia, that a lawyer shall not knowingly make a false statement of fact or law to the tribunal or offer evidence that the lawyer knows to be false.
There is no indication in the record that any evidence was withheld from the defense in violation of Brady, supra. The state complied with all motions for discovery, including lab reports. There were no medical records that were not provided and Det. Mendels testified that there were no DNA tests conducted, because she did not receive samples from McGill or Darby. ^Regarding the alleged false testimony of the detective and officer, McGill cross-examined the witnesses and impeached them to the best of his ability during trial. The record is devoid of any indication that the assistant district attorney made a false statement or offered false evidence to the court. These assignments are without merit.

Electronic Evidence

In another assignment of error, McGill submits that the trial court improperly admitted electronic evidence. However, he fails to argue this assignment, stating only that (verbatim), “the parties have consented and the consent to being depicted or recorded been obtained from each witness appearing in the recording and reproduction.” Whereas, this assignment could be deemed abandoned for failure to argue, we note that there is also no legal basis or authority to claim that consent is needed by every individual seen on the police recording for the admission of the video tape. This assignment of error is without merit.

Recusal of Trial Judge

McGill also submits that the trial judge eiTed in failing to recuse himself. On March 11, 2016, McGill filed a pro se “Motion to Appoint a New Judge” in which he complained that the judge refused to hear his bond reduction motion five times and stated that the district attorney had no evidence against him. He requested a new assistant district attorney and a new trial judge. At a hearing on the motion, the trial judge attempted to dispose of a myriad of pending pro se motions, including the motion for a new judge. McGill informed the trial judge that the motion was seeking the judge’s recusal. The trial judge informed McGill that, in that case, the proceedings would stall while the matter of the recusal was decided. McGill | ^responded “I just want to forget it then. I just want to get to trial.” The district attorney inquired as to whether McGill was waiving the motion to recuse, to which McGill responded, “Yeah, I’m waiving everything. I just want to go *1193 to trial.” The trial judge then explained to McGill the procedure for determining whether recusal is warranted and noted that he did not find there to be any stated grounds for a recusal under La. C. Cr. P. art. 671. With no objection from McGill, the trial judge allowed McGill to withdraw the motion to recuse and held that the motion, along with the other pending pro se motions, was abandoned and withdrawn.
Subsequently, in another court appearance, McGill informed the trial judge in open court that he believed there to be a conflict with that judge presiding over the case because McGill had filed a civil suit in federal court naming the judge as a defendant. McGill agreed that he was re-urging his motion to recuse based on this alleged “conflict of interest.” The trial judge noted that he had not been served with any such lawsuit, and the assistant district attorney was unaware of any such lawsuit. The assistant district attorney reserved the right to respond to the motion to recuse if such suit had been filed. The trial judge again explained to McGill that the matter had to be passed to address the motion to recuse. McGill was dissatisfied with the matter being passed and indicated that he was ready for trial and “just wanted it brought up.” McGill then advised the judge that he had also filed a disciplinary complaint against him with the judicial commission. The trial judge reviewed La. C. Cr. P. art. 671 and found that there was no basis for recusal or to refer the issue to another judge for determination. Noting that grounds (1) and (6) of Article 671 would be the only potential grounds implicated in the instant matter, the judge opined that neither a disciplinary 118complaint nor lawsuit would have any bearing on any ruling he may make in the instant criminal ease. The motion to recuse was denied.
Louisiana C. Cr. P. art. 671 provides, in pertinent part:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter’s employment in the cause;
(4) Is a witness in the cause;
(5) Has performed a judicial act in the case in another court; or '
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
If the trial judge finds that the stated grounds are not valid, then the judge can deny the motion without referring it to another judge. State v. Rollins, 32,686 (La.App. 2d Cir. 12/22/99), 749 So.2d 890, writ denied, 2000-0549 (La. 09/15/00), 768 So.2d 1278, citing State v. Williams, 601 So.2d 1374 (La. 1992). Trial judges are presumed to be impartial. A defendant must provide specific facts in support of a valid ground for recusal. Mere conclusory allegations will not support a motion to recuse a judge. Id., citing State v. Small, 29,137 (La.App. 2d Cir. 04/02/97), 693 So.2d 180.
McGill’s grounds for recusal of the trial judge are nonspecific and fail to provide sufficient information for recusal. The allegation that a lawsuit h3has been filed in *1194 federal court was never substantiated. The judge was not served and the assistant district attorney was unaware of the alleged suit. McGill failed to articulate how any suit, if in existence, would create bias or impartiality on the part of the trial judge. Likewise, there was nothing but a conclusory statement by McGill that a disciplinary complaint had been filed. With nothing more specific, the stated grounds did not support recusal. This assignment of error is without merit.

Right to Speedy Trial

In his final assignment, McGill is apparently arguing that his fundamental right to a speedy trial was violated. As with the previous assignment, McGill has abandoned this assignment as he provides no argument on this issue; rather, he simply lists the factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determining whether a defendant’s right to a speedy trial has been violated. Nonetheless, we note that McGill’s constitutional right to speedy trial was not violated.
It is well settled that there are two separate and distinct bases for a defendant’s right to a speedy trial: a statutory right granted by La. C. Cr. P. art. 701 and a constitutional right embodied in the Sixth Amendment to the United States Constitution and Article I, Section 16 of the Louisiana Constitution of 1974. The two are not equivalent. State v. Bradham, 46,985 (La.App. 2d Cir. 02/29/12), 87 So.3d 200.
Louisiana C. Cr. P. art. 701 provides that the sole remedy for failure to commence trial within the mandated time period is pre-trial release without bail. Once a defendant has been convicted, any allegation that La. C. Cr. P. art. 701 has been violated becomes moot. State v. Mack, 37,174 (La.App. 2d Cir. 006/27/03), 850 So.2d 1035, writ denied, 2003-2122 (La. 01/16/04), 864 So.2d 628.
The constitutional right to a speedy trial is fundamental and is guaranteed to an accused. U.S. Const. Amends. VI and XIV; La. Const. art. I, § 16; Barker v. Wingo, supra; State v. Jordan, 35,643 (La.App. 2d Cir. 04/03/02), 813 So.2d 1123, writ denied, 2002-1570 (La. 05/30/03), 845 So.2d 1067. The right attaches when an individual becomes an accused, either by formal indictment or bill of information or arrest and actual restraint. State v. Bodley, 394 So.2d 584 (La. 1981); State v. Jordan, supra.
Louisiana has adopted the four factors used in Barker v. Wingo, supra, to assess whether a defendants speedy trial right has been violated. These factors include: (1) length of delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, (4) and prejudice to the defendant. Id.; State v. James, 394 So.2d 1197 (La. 1981); State v. Jordan, supra.
Here, a review of the record does not indicate a violation of McGill’s right to a speedy trial. For this non-capital felony, the state had two years from the date of the bill of information to commence trial. La. C. Cr. P. art. 578. The bill of information was filed on April 14, 2014. Trial began on June 15, 2015, one year and two months after the filing of the bill. McGill asserted his right to speedy trial in several pro se motions. The state was able to bring McGill to trial in little over a year despite the convening of a sanity commission, a motion to represent himself, and a plethora of other pre-trial pro se motions. Notably, McGill ultimately withdrew and waived several pro se motions so that trial could proceed. The delay in bringing McGill to trial was not statutorily late, nor was it presumptively prejudicial. LiAlthough this assignment of error was abandoned, we conclude it is also substantively without merit.
*1195 CONCLUSION
For the foregoing reasons, Stephen Michael McGill’s conviction is affirmed; however, the habitual offender adjudication and sentence is vacated, and the matter is remanded for further proceedings at the trial court.
CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED AND REMANDED FOR FURTHER PROCEEDINGS.